Ruben W. **MANGELS**, Administrator of
the Estate of Luella R. Mangels,
deceased, Appellant,

v.

**UNITED STATES of America, Appellee.**

**No. 86–1647.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 16, 1987.

Decided Sept. 16, 1987.

Thomas C. Fritzsche, Bettendorf, Iowa, for appellant.

Michael C. Durney, of the Dept. of Justice, Washington, D.C., for appellee.

Before ARNOLD and WOLLMAN, Circuit Judges, and BOGUE*, Senior District Judge.

WOLLMAN, Circuit Judge.

Ruben W. Mangels, administrator of the estate of Luella R. Mangels (the estate), appeals from a district court judgment that denied a refund for overpayment of federal estate tax based on special use valuation of farmland under section 2032A of the Internal Revenue Code, 632 F.Supp. 1555. The district court held that the acts of the court-appointed conservator did not fulfill the material participation requirement for special use valuation under I.R.C. § 2032A(b)(1)(C)(ii).[1] We reverse and re-

---

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 and related regulations as amended and in effect at the date of death.

mand for entry of judgment in favor of the estate.

## I.

Luella R. Mangels (decedent) was physically and mentally incapacitated and unable to handle her own affairs throughout the entire period relevant to the determination of "material participation" under I.R.C. § 2032A.[2] During that period (August 15, 1974, to August 15, 1980, the date of decedent's death), Northwest Bank & Trust Company (Northwest) served as decedent's court-appointed conservator.[3]

As conservator, Northwest leased farmland owned by decedent in Scott County, Iowa, to third-party tenants[4] on a crop-share basis. Under the leases, Northwest and the tenant jointly participated in farm production decisions and equally shared the cost of fertilizer, pesticide, herbicide and seed. All machinery and implements used on the farm were furnished by the tenant. The farm was not used as a principal residence by the decedent, any member of her family, or any agent of Northwest during this time.

Northwest's farm activities during the 1974 to 1980 period included the following: (1) daily attention to farm market reports and execution of futures contracts as required, (2) quarterly physical inspection of the growing crop and of the farm ground for needed fence and tile repairs (approximately two hours per inspection), (3) monthly telephone or in-person contact with the tenant concerning the progress of the crop, cultivation, herbicide and pesticide decisions and miscellaneous operating problems (approximately one hour per month), (4) annual sessions with the tenant concerning cropping decisions and the prospective year's operating plan, including assistance in preparing tenant's operating loan application (one and one-half to two hours per session), (5) annual post-harvest analysis of the cash equivalent rental effect of annual crop-share proceeds (approximately four hours annually), and (6) occasional long-term management decisions. No agent or employee of Northwest performed any physical labor on the farm.

Decedent's share of the farm income was not classified as self-employment income on her annual income tax returns and no self-employment tax was paid on the farm income for the period 1974 to 1980. The failure to report the farm income as self-employment income was unintentional and occurred because Northwest lacked understanding of the complex provisions of the Internal Revenue Code and related regulations.

The farmland was originally included in the taxable estate at $424,000, its value as

---

2. I.R.C. § 2032A provides in pertinent part:
   (b) Qualified real property.—
   (1) In general.—For purposes of this section, the term "qualified real property" means real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, was being used for a qualified use by the decedent or a member of the decedent's family, but only if—
   * * * * * *
   (C) during the 8–year period ending on the date of the decedent's death there have been periods aggregating 5 years or more during which—
   * * * * * *
   (ii) there was material participation by the decedent or a member of the decedent's family in the operation of the farm or other business, * * *
   * * * * * *
   (e) Definitions; special rules.—For purposes of this section—

* * * * * *

   (6) Material participation.—material participation shall be determined in a manner similar to the manner used for purposes of paragraph (1) of section 1402(a) (relating to net earnings from self-employment).

3. This was a voluntary conservatorship. Under Iowa statute, a voluntary conservatorship is created upon petition of the proposed ward when the court determines that the appointment of a conservator will inure to the best interest of the applicant. Iowa Code Ann. § 633.572 (1987). No agent of Northwest participating in the operation of the farm was related to decedent.

4. Throughout the relevant period, the farm was leased either to Arnold and Evelyn Petersen or to Nesretep Farms, Inc., a farm corporation formed by Arnold and Evelyn Petersen, Wayne Marten, their son-in-law, and their families. The tenants were unrelated to decedent.

of the date of death. The estate claimed a refund of tax, electing special use valuation under section 2032A of the Internal Revenue Code of 1954 on a quarter section of the farm operated by Ruben Mangels (Mangels), decedent's son, following her death. The section 2032A election, if allowed, would have decreased the value of the farm included in decedent's gross estate to $125,061, thereby reducing the taxable estate by $298,939. The parties have stipulated that all requirements for the election of the section 2032A valuation have been met except for the material participation requirement of section 2032A(b)(1)(C)(ii).

Based on the stipulated facts, the district court upheld the Commissioner's refusal to permit special use valuation of the farmland, holding that Northwest's activities did not constitute "material participation" in the operation of the farm as contemplated by I.R.C. § 2032A(b)(1)(C)(ii). The court found that Northwest's participation "appears to have been no greater than that of the landlord in the typical crop-share lease arrangement * * * [and] not enough to constitute 'material participation' under the statute." Because the court resolved this issue in favor of the Commissioner, it did not decide whether the acts of the conservator were attributable to the decedent for the purpose of establishing material participation.

The estate argues on appeal that the district court erred in concluding that the level of Northwest's activity was insufficient to constitute "material participation." The estate further contends that Northwest's acts should be attributed to decedent for the purpose of satisfying the requirements of I.R.C. § 2032A(b)(1)(C)(ii). The parties having stipulated to the facts below, we review the district court's application of the law to the facts *de novo*. *Pursley v. City of Fayetteville*, 820 F.2d 951, 953 (8th Cir.1987); *In re Newcomb*, 744 F.2d 621, 625 (8th Cir.1984).

We undertake our review by recalling the purpose of section 2032A(b)(1)(C)(ii), which is to reduce the estate tax liability that would otherwise result from the imposition on the estates of decedents owning family farms or other closely-held businesses the general rule that the fair market value of the property controls. This purpose has been well summarized by the Court of Appeals for the Eleventh Circuit:

> In enacting 26 U.S.C. § 2032A in 1976, Congress provided a limited exception to the aforementioned general rule with respect to the valuation for federal estate tax purposes of certain family farms and other closely-held businesses. * * * The basic intent behind this provision was to grant relief to heirs of family farms, who might otherwise find that valuation of their newly-inherited farmland at its "highest and best use" would produce such a large estate tax liability that they would have to liquidate the farm in order to pay the tax. See H.R.Rep. No. 94–1380, 94th Cong., 2d Sess. at 21–22, U.S. Code Cong. & Admin.News pp. 2897, 3375, 3376 (1976–3 Cum.Bull. (Vol. 3) 735, 755–756). Accordingly, section 2032A permits qualifying real estate to be valued for estate tax purposes on the basis of its "actual use". "Actual use valuation" has the effect of reducing the estate tax bill considerably because, typically, working family farms do not yield high annual profits.

*Estate of Sherrod v. Comm'r*, 774 F.2d 1057, 1060–62 (11th Cir.1985) (footnotes omitted), *cert. denied*, —— U.S. ——, 107 S.Ct. 66, 93 L.Ed.2d 24 (1986). Simply stated, "[t]he purpose of the statute was to encourage the continuation of family farms after the death of the farm's owner." *Martin v. Comm'r*, 783 F.2d 81, 82 (7th Cir.1986).

## II.

The first issue is whether Northwest's participation on behalf of decedent was material. The determination of whether those actions rose to the level of material participation requires a consideration of the applicable factors set forth in Treasury Regulation § 20.2032A–3(e).[5] Essentially,

5. Treas.Reg. § 20.2032A–3(e) provides in pertinent part:

   (1) *In general.* * * * In the absence of * * * direct involvement in the farm or other busi-

this involves an assessment of the types of activities involved and the financial risks assumed. Treas.Reg. § 20.2032A–3(a).[6]

A minimum requirement to a finding of material participation is that Northwest must have regularly advised or consulted with the tenant on the operation of the farm. It need not have made all final management decisions alone, but it must have participated in a substantial number of those decisions. Operating decisions include those such as when to plow, fertilize, disk, plant and harvest. *Estate of Coon v. Comm'r,* 81 T.C. 602, 610 (1983). In addition to the minimum requirement, Treasury Regulation § 20.2032A–3(e)(2) lists four other factors to be considered in determining the presence of material participation: (1) the regular inspection of the production activities on the land; (2) the advancement of funds and the assumption of financial responsibility for a substantial portion of the farm's operating expense; (3) the fur-

nishing of a substantial portion of the machinery, implements, and livestock used in the production activities; and (4) the maintenance of a principal residence on the premises.

The district court weighed the foregoing factors against the activities of a landlord in a typical crop-share lease arrangement. The regulation requires no such comparison, however, and we believe that equating the material participation test of section 2032A(b)(1)(C)(ii) with the managerial participation of a landlord in a typical crop-share arrangement imposes a burden of proof greater than that necessary to effectuate the purpose of the statute.[7]

We conclude that Northwest's activities constituted material participation in the lease of the tillable farmland. Northwest's activities satisfied the minimum requirement of regular consultation and substantial participation in final management deci-

ness, the activities of either the decedent or family members must meet the standards prescribed in this paragraph and those prescribed in the regulations issued under section 1402(a)(1). Therefore, if the participant (or participants) is self-employed with respect to the farm or other trade or business, his or her income from the farm or other business must be earned income for purposes of the tax on self-employment income before the participant is considered to be materially participating under section 2032A. Payment of the self-employment tax is not conclusive as to the presence of material participation. If no self-employment taxes have been paid, however, material participation is presumed not to have occurred unless the executor demonstrates to the satisfaction of the Internal Revenue Service that material participation did in fact occur and informs the Service of the reason no such tax was paid. In addition, all such taxes (including interest and penalties) determined to be due must be paid. * *

(2) *Factors considered.* No single factor is determinative of the presence of material participation, but physical work and participation in management decisions are the principal factors to be considered. As a minimum, the decedent and/or a family member must regularly advise or consult with the other managing party on the operation of the business. While they need not make all final management decisions alone, the decedent and/or family members must participate in making a substantial number of these decisions. Additionally, production activities on the land should be inspected regularly by the

family participant, and funds should be advanced and financial responsibility assumed for a substantial portion of the expense involved in the operation of the farm or other business in which the real property is used. In the case of a farm, the furnishing by the owner or other family members of a substantial portion of the machinery, implements, and livestock used in the production activities is an important factor to consider in finding material participation. With farms, hotels, or apartment buildings, the operation of which qualifies as a trade or business, the participating decedent or heir's maintaining his or her principal place of residence on the premises is a factor to consider in determining whether the overall participation is material.

6. Although this regulation interprets language defined by the statute rather than making a substantive rule under express congressional authorization, it must be given substantial weight. *Martin,* 783 F.2d at 84.

7. Section 211(a)(1) of the Social Security Act provides replacement income to farm owners and tenants who materially participate in the production or management of production of agricultural or horticultural commodities. Although case law interpreting that section is not necessarily applicable in analyzing I.R.C. § 2032A, this court has determined that landlord participation beyond the normal amount is an improper standard for determining material participation under the Social Security Act. *Foster v. Celebrezze,* 313 F.2d 604, 607–08 (8th Cir.1963).

sions. Northwest, in monthly and annual conferences, jointly participated with the tenant in decisions concerning crop patterns and rotation, the level and formula of fertilizer application, chemical, weed and insect control, fence repair, plowing and minimum tillage techniques, seed purchasing and crop planting and harvesting.[8]

In addition to the minimum requirement, two of the four additional factors were present: regular inspection of the production activities and advancement of funds and assumption of financial responsibility for a substantial portion of the farm's operating expenses.[9] Concerning regular inspections, Northwest made quarterly two-hour inspections of the growing crop and of the farm ground to check on the need for any fence and tile repairs. Commissioner argues that these inspections were inadequate because Northwest spent only eight hours annually making the inspections. The regularity requirement, however, does not necessarily require the expenditure of a great deal of time nor frequent inspections. Rather, the sufficiency of the inspections must be measured in relation to the total need for such inspections. *See* Treas.Reg. § 20.2032A–3(g) Ex. 7. *See also Sherrod*, 774 F.2d at 1063 (tax court's finding of material participation based on inspection of timberland twice a year for eight years was not incorrect as a matter of law). Because Northwest's two-hour inspections related to less than a quarter section of growing crops, the total time necessary for inspection was perforce minimal.

8. The level of participation by Northwest exceeds that found insufficient in *Coon*, 81 T.C. 602 (1983), wherein the petitioner's participation was generally limited to discussing with the tenants the planned crops for the succeeding year, directing the tenants where to purchase the landlord's share of the seed and fertilizer, and consulting with the tenants regarding improvements on major repairs to the property. *Id.* at 609.

9. The wording of the regulation itself indicates that the first two factors be accorded more weight than the others, stating that production activities *"should* be inspected regularly" and "funds *should* be advanced and financial responsibility assumed." Treas.Reg. § 20.2032A–

The second factor was also present. Decedent assumed financial responsibility and risk by paying one-half the fertilizer, pesticide, herbicide, and seed costs incurred in the farm operations. *Cf. Coon*, 81 T.C. at 610 (landlord's payment of one-half of the seed, the real estate taxes and building insurance constituted a substantial portion of the expense).

The final requirement for material participation is that the income generated by the farm must be earned income for self-employment purposes. Treas.Reg. § 20.-2032A–3(e)(1). Failure to pay self-employment tax on decedent's farm income is not fatal, however, because Mangels demonstrated that material participation did occur, provided a reason why the tax was not paid, and agreed to an assessment of the relevant self-employment tax, penalty, and interest. *Id.*[10]

### III.

■ Having concluded that Northwest's activities constituted material participation under I.R.C. § 2032A(b)(1)(C)(ii), we next address whether they were attributable to decedent.

In other conservatorship/guardianship situations, the acts of an approving court on behalf of an incompetent have been considered in legal effect the acts of the incompetent for federal tax purposes. *City Bank Farmers Trust Co. v. McGowan*, 323 U.S. 594, 65 S.Ct. 496, 89 L.Ed. 483 (1945); *Harris v. Comm'r*, 477 F.2d 812 (4th Cir.1973); *Estate of Himmelstein v. Comm'r*, 73 T.C. 868 (1980). In *City*

3(e)(2) (emphasis added). Conversely, the supplying of machinery, implements, and livestock is listed as "an important factor" and the maintenance of a principal residence on the premises as merely "a factor." *Id.*

10. Separate payment of the self-employment tax, penalty and interest is not necessary for a finding of material participation, because the overpayment of federal estate tax attributable to the special use valuation exceeds the self-employment tax, penalty, and interest payable. Rather, this amount, calculated in accordance with Rev.Rul. 83–32, 1983–8 I.R.B. 8, should be offset against any federal estate tax overpayment.

*Bank,* the Supreme Court addressed the question whether gratuitous transfers of an incompetent's property by a court acting on her behalf constituted transfers by the "decedent" as described in section 302(e) of the Revenue Act of 1926. The Court held that where a court acts on behalf of an incompetent pursuant to statutory authority, an act by the court is in legal effect the act of the incompetent. *City Bank,* 323 U.S. at 598–99, 65 S.Ct. at 497–98. The Court commented that it would be "sticking in the bark" to consider transfers by the court differently than transfers by the incompetent merely because the applicable section of the Internal Revenue Code did not add a phrase specifically addressing transfers made for the benefit of the incompetent pursuant to statutory authorization. *Id.* at 599, 65 S.Ct. at 498.

Subject to court approval, Northwest was authorized by Iowa law to lease decedent's property when it appeared to be in decedent's best interest to do so. Iowa Code Ann. §§ 633.647 (1964 & Supp.1987), 633.652 (1964), 633.386 (1987). Acting pursuant to that authorization, Northwest, on behalf of decedent, entered into crop-share leases with tenant and performed decedent's obligations under the leases. It would be putting form over substance to consider Northwest's actions differently from those of decedent merely because the

regulation defining material participation did not include a phrase specifically addressing the statutorily-created conservatorship.

Commissioner contends that attribution of Northwest's acts to decedent is impermissible because the "plain meaning" of I.R.C. § 2032A(b)(1)(C)(ii) limits eligible participation to acts by "the decedent or a member of decedent's family." The plain meaning rule is inapplicable, however, when it yields absurd consequences and there is an alternative interpretation that reasonably effects the statute's purpose. *Ashley, Drew & N. Ry. Co. v. United Transp. Union Local 1121,* 625 F.2d 1357, 1365 (8th Cir.1980); *Hodgson v. Bd. of County Comm'rs,* 614 F.2d 601, 612 (8th Cir.1980). Absurd consequences and a reasonable alternative are present here.

Iowa law provides for the establishment of a voluntary conservatorship to protect the estate of the ward when in the opinion of the court such an arrangement is in the ward's best interest. Iowa Code Ann. §§ 633.572 (1987), 633.641 (1964). Application of the plain meaning rule to I.R.C. § 2032A(b)(1)(C)(ii) would impose a higher tax liability on decedent's estate merely because she was placed in a conservatorship prior to death.[11] The consequences of such an interpretation are absurd because it discourages creation of conservatorships,

---

11. Commissioner argues that the 1981 amendment to section 2032A implies that Congress intended this result for decedents dying before 1982. Subsection (b) of section 2032A was amended by adding the following:

"(4) DECEDENTS WHO ARE RETIRED OR DISABLED.—

"(A) IN GENERAL.—If, on the date of the decedent's death, the requirements of paragraph (1)(C)(ii) with respect to the decedent for any property are not met, and the decedent—

"(i) was receiving old-age benefits under title II of the Social Security Act for a continuous period ending on such date, or

"(ii) was disabled for a continuous period ending on such date,

then paragraph (1)(C)(ii) shall be applied with respect to such property by substituting 'the date on which the longer of such continuous periods began' for 'the date of the decedent's death' in paragraph (1)(C).

"(B) DISABLED DEFINED.—For purposes of subparagraph (A), an individual shall be

disabled if such individual has a mental or physical impairment which renders him unable to materially participate in the operation of the farm or other business.

Economic Recovery Tax Act of 1981, § 421(b)(2), I.R.C. § 2032A(b)(4)(A) & (B) (1987).

We draw no such inference. First, the amendment's alternative computation periods are applicable only if the pre-amendment requirements for material participation are not satisfied. Thus, the additional computation periods do not implicitly limit or circumscribe application of the original computation periods for decedents dying before 1982. Moreover, the 1981 amendment is not rendered meaningless by this interpretation because the amended provisions are not restricted to those who have been placed in a conservatorship. Rather, the liberalized computation periods apply to anyone who has a "mental or physical impairment which renders him unable to materially participate in the operation of the farm. I.R.C. § 2032A(b)(4)(B) (1987).

which by definition should be encouraged as in the best interest of the ward's estate. Further, our interpretation reasonably effects the basic intent behind the special use provisions, as summarized above.

Accordingly, we hold that Northwest's activities on behalf of decedent satisfied the material participation requirements of I.R.C. § 2032A(b)(1)(C)(ii). We reverse the judgment and remand the case to the district court to award a refund as prayed for by the estate.