DONALD W. AND MARY JANE DUGAN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dugan v. Commissioner
Docket No. 9702-91
United States Tax Court
T.C. Memo 1994-578; 1994 Tax Ct. Memo LEXIS 586; 68 T.C.M. (CCH) 1251; November 28, 1994, Filed *586 Decision will be entered for petitioners. For petitioners: Thomas C. Morrison. For respondent: Joan Steele Dennett. PAJAK
PAJAK
MEMORANDUM OPINION PAJAK, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. All section references are to the Internal Revenue Code in effect for the year in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined a deficiency in petitioners' 1988 Federal income tax of $ 1,815. The sole issue the Court must decide is whether petitioner husband is subject to self-employment tax in the amount of $ 1,815 on the net earnings from his farm and ranch activities in 1988. Some of the facts in the case have been stipulated and are so found. Petitioners resided in Rapid City, South Dakota, at the time they filed their petition. In 1988, petitioners reported income and expenses from three farm and ranch properties (the home ranch, the folk's farm, and the Huston Ranch) on Form 4835, Farm Rental Income and Expenses. The amounts of income and expense from these properties are not in issue. The farm and ranch properties are located *587 in the vicinity of Murdo, South Dakota, approximately 140 miles from petitioners' residence. Donald W. Dugan (petitioner) lived on the 1,440 acre home ranch from 1934, at the age of 10, until 1959 when he moved to Rapid City, South Dakota. He worked at an air base for 2 or 3 years. He then worked for the Holiday Inn, Rapid City, for 26 years until he retired. Petitioner Mary Jane Dugan worked as a school teacher in Rapid City until she retired in 1988. Petitioner purchased the home ranch in 1960 or 1961. In 1961, petitioner's life long friend, Mr. Edwin Aske, moved onto the home ranch. At that time, Mr. Aske and petitioner entered into an oral sharefarming arrangement. In accordance with the sharefarming arrangement between petitioner and Mr. Aske, petitioner furnished the cows and bulls, each party paid one-half of the other expenses, and each party received one-half of the calf crop. In 1988, petitioner leased a 3,700 acre ranch known as the Huston Ranch. Petitioner and Mr. Aske used the Huston Ranch as summer pasture for the cattle operation. During 1988, petitioner had gross income of $ 35,127 which was received from the Department of Agriculture, Conservation Reserve *588 Program (DOA CRP), as a result of a cover crop raised on 420 acres of the home ranch. Petitioner had a net loss of $ 1,389 with respect to the cover crop. Petitioner also had gross income of $ 79,825 from the cattle sharefarming arrangement with Mr. Aske. Petitioner had a net profit of $ 15,599 from the cattle sharefarming operation for 1988. In 1988, as part of the sharefarming arrangement with Mr. Aske, petitioner reported gross income of $ 5,392, which was cash rent from 800 acres of the Huston Ranch, and had net income of $ 576. In 1988, petitioner's mother owned the folk's farm, which she acquired when petitioner's father died in 1987. Petitioner had a sharecropping arrangement with his mother which provided that petitioner kept two-thirds of the income and paid all of the expenses of the farm operation on the folk's farm. As the land owner, petitioner's mother received the other one-third of the folk's farm income. In 1988, petitioner had gross income of $ 55,706 from the folk's farm, which included $ 41,100 from the sharecropping arrangement with his mother, $ 10,209 from a DOA CRP differential, and $ 4,397 of crop insurance proceeds from an insurance company. Petitioner *589 had a net loss of $ 845 from the operation of the folk's farm for 1988. It is clear that petitioner had a sharefarming arrangement and a sharecropping arrangement with two different individuals. Petitioner had a sharefarming arrangement with Mr. Aske, which involved the cattle operation on the home ranch and the leased Huston Ranch. Petitioner had a sharecropping arrangement with petitioner's mother, which involved the grain operation on the folk's farm. Section 1401 provides that a tax shall be imposed on the self-employment income of every individual. Generally, rentals from real estate are excluded from the computation of net earnings from self-employment. Sec. 1402(a)(1). Under the following exception, section 1402(a)(1) includes as self-employment income: any income derived by the owner or tenant of land if (A) such income is derived under an arrangement, between the owner or tenant and another individual, which provides that such other individual shall produce agricultural * * * commodities (including livestock * * *) on such land, and that there shall be material participation by the owner or tenant * * * in the production or the management of the production *590 of such agricultural * * * commodities, and (B) there is material participation by the owner or tenant * * * with respect to any such * * * commodity. [Emphasis supplied.]
Income derived from sharecropping or sharefarming arrangements where the owner or tenant materially participates in the production or the management of the production of such commodities is included within this exception, and therefore is subject to self-employment tax. Sec. 1.1402(a)-4(b), Income Tax Regs.; cf. Estate of Coon v. Commissioner, 81 T.C. 602, 611-612 (1983) (applying section 1402(a)(1) for estate tax purposes). Petitioner was involved in a sharefarming arrangement with Mr. Aske and a sharecropping arrangement with his mother. A plain reading of section 1402(a)(1) indicates that each arrangement must be analyzed separately to determine whether the income from the arrangement is subject to self-employment tax. Therefore, we need not be concerned with the sharecropping arrangement related to the folk's farm because it generated a loss and would not result in self-employment tax even if petitioner materially participated in that operation. We consider the sharefarming *591 arrangement related to the cattle operation because it made a profit that may be subject to self-employment tax. Section 1402(a)(1) provides that both requirements set forth below must be met before income from a sharefarming or sharecropping arrangement is included in determining net earnings from self-employment. First, the income must be derived under an arrangement which provides that the owner or tenant materially participate in the production or the management of the production of agricultural commodities. Sec. 1.1402(a)-4(b)(1)(i), Income Tax Regs. Second, the owner or tenant must actually materially participate in the production or the management of the production of agricultural commodities. Sec. 1.1402(a)-4(b)(1)(ii), Income Tax Regs.
We will first examine the requirement under section 1.1402(a)-4(b)(1)(ii), Income Tax Regs., to determine whether petitioner actually materially participated in the cattle operation. Without consulting petitioner, Mr. Aske decided when to buy feed, what kind of feed to buy, and when to breed the livestock. Mr. Aske decided when to sell the calves without consulting petitioner. Mr. Aske decided which and how many breeding cows to sell *592 and when to call a veterinarian. Mr. Aske decided when to move the cattle to and from the summer pasture. Petitioner seldom inspected the cattle. When the operation began in 1961, petitioner and Mr. Aske selected the breed of cattle to be raised on the ranch. On occasion, petitioner and Mr. Aske had telephone conversations related to the ranch. Approximately 300 acres of the home ranch were used to produce hay. Petitioner provided no labor, advice, or consultation to Mr. Aske with regard to the hay raising activity. The parties stipulated that in 1988 petitioner did not physically work on the ranch. Upon examination of the facts in this case, we are convinced that petitioner did not materially participate in the production of or the management of the production of the cattle. Felber v. Commissioner, T.C. Memo. 1992-418, affd. without published opinion 998 F.2d 1018 (8th Cir. 1993); sec. 1.1402(a)-4(b)(6), Example (4). Because this basic requirement of the regulation is not met, we do not need to consider the other basic requirement of the regulation. We hold that petitioner's income from this sharefarming *593 arrangement is not subject to self-employment tax. We do not consider petitioner's activities with regard to the cover crop grown on the home ranch because petitioner had a net loss of $ 1,389, which would not result in self-employment tax. Decision will be entered for petitioners.