Estate of Arthur H. McCOY, deceased,
Robert McCoy, Executor,
Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL
REVENUE, Respondent-Appellee.

No. 86–1008.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 11, 1986.

Decided Jan. 23, 1987.

Walter E. Schutt (argued), Wilmington, Ohio, for petitioner-appellant.

Fred T. Goldberg, Jr., Chief Counsel, I.R.S., Washington, D.C., Michael L. Paup, Lead Counsel Chief, Appellate Section, Roger M. Olsen, Acting Asst. Atty. Gen., Jonathan S. Cohen, Douglas G. Coulter (argued) Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before LIVELY, Chief Judge, KEITH and MERRITT, Circuit Judges.

LIVELY, Chief Judge.

This case concerns the special valuation treatment accorded "qualified real property" under 26 U.S.C. § 2032A, first enacted in 1976 and amended by section 421 of the Economic Recovery Tax Act of 1981 (ERTA), Pub.L. No. 97–34 (1981). Ordinarily, all property subject to the federal estate tax must be reported at its fair market value as of the date of a decedent's death, 26 U.S.C. § 2031 or an optional valuation date, 26 U.S.C. § 2032. However, under § 2032A a decedent's estate may elect to report real estate that meets the definition of "qualified real property" at a special use valuation, resulting in lower estate taxes. The precise question to be decided is whether a provision of § 421(k)(5) of ERTA had the effect of validating an otherwise untimely election by the executor of Arthur H. McCoy's estate.

I.

Arthur H. McCoy died on April 23, 1980, the owner of an undivided one-half interest in a family farm of 244 acres in Clinton County, Ohio. McCoy had materially participated in the operation of the farm during the entire time he owned it, and the Commissioner of Internal Revenue (Commissioner) concedes that if the execution of McCoy's estate made a timely election, the estate would be entitled to special use valuation. However, the unamended special use provision of the Internal Revenue Code (Code) required that the election be made no later than the date on which the estate tax return was required to be filed, 26 U.S.C. § 2032A(d)(1), i.e., nine months after the date of McCoy's death, 26 U.S.C. § 6075(a). The executor filed an estate tax return on February 11, 1981, nineteen days after it was due. The return included a special use election under which the farm-

land was valued at $103,304, rather than at its fair market value of $235,139.

The Commissioner did not dispute the correctness of these figures under the two different methods of valuation, but assessed a deficiency based on his determination that the election was untimely. The estate contested this determination in the United States Tax Court, contending that § 421(k)(5) of ERTA established a grace period by which its otherwise untimely election became timely. The Tax Court agreed with the Commissioner and upheld the deficiency in a memorandum opinion filed September 26, 1985. T.C. Memo. 1985–509.

## II.

Before its 1981 amendment, the code definition of "qualified real property" provided in relevant part:

**(b) Qualified real property**

**(1) In general**

For purposes of this section, the term "qualified real property" means real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, was being used for a qualified use....

26 U.S.C. § 2032A(b)(1) (Supp. IV 1980). After the amendment, this section provided:

**(b) Qualified real property**

**(1) In general**

For purposes of this section, the term "qualified real property" means real property located in the United States which was acquired from or passed from the decedent to a qualified heir of the decedent and which, on the date of the decedent's death, was being used for a qualified use *by the decedent or a member of the decedent's family*

....

(new language in italics) 26 U.S.C. § 2032A(b)(1) (Supp. V 1981). This amendment was contained in § 421(b)(1) of ERTA.

Our decision turns on the construction of § 421(k)(5) of ERTA which provided in relevant part:

(5) CERTAIN AMENDMENTS MADE RETROACTIVE TO 1976.—(A) IN GENERAL.—The amendments made by subsections (b)(1), (c)(2), (j)(1), and (j)(2) shall apply with respect to the estates of decedents dying after December 31, 1976.

(B) TIMELY ELECTION REQUIRED. —Subparagraph (A) shall only apply in the case of an estate if a timely election under section 2032A was made with respect to such estate. If the time for making an election under section 2032A with respect to any estate would have otherwise expired after July 28, 1980, the time for making such election shall not expire before the date 6 months after the date of the enactment of this Act.

ERTA was enacted August 13, 1981. Since the time for making an election for the McCoy estate would "otherwise have expired after July 28, 1980," the executor argues that § 421(k)(5) extended that time to February 13, 1982 (6 months after ERTA became effective). The executor relies on the fact that § 421(k)(5) grants the grace period to "any estate" whose time for making the election would otherwise have expired after July 28, 1980.

The Commissioner's position is equally straightforward. He argues that the purpose of § 421(b)(1) of ERTA was to expand the definition of qualified real property so that a qualified use by a member of the decedent's family, in addition to such use by the decedent himself, would make the estate eligible for a special use valuation. In making § 421(b)(1) retroactive to December 31, 1976 and extending the time for election, according to the Commissioner, Congress merely gave those estates which qualified for the first time under the new definition a reasonable time in which to make the election. It was not the purpose of the amendment, this argument continues, to reopen the election period for an estate that qualified under the older, more

restricted definition, but had failed to make a timely election.

### III.

The provision for special use valuation was originally added to the Code on the basis of a determination by Congress that it is "inappropriate" to value land actually used for family farming or other closely held business purposes at its fair market value based on its "highest and best use." Congress noted that levying estate taxes based on the land's potential for development or speculation could cause heirs to sell such land rather than continuing the former use. Deeming it desirable to encourage the continued use of land for farming and other small business purposes, Congress enacted 26 U.S.C. § 2032A. When all the requirements of that section are met, estate taxes on qualifying land are significantly lower than if the land were taxed on its fair market value. H.R.Rep. No. 1380, 94th Cong., 2nd Sess. 21–22 *reprinted in* 1976 U.S.Code Cong. & Admin. News 2897, 3356, 3375–76.

In proposing the 1981 amendments to § 2032A the congressional committee gave the following reason for the changes:

The current use valuation provision has provided extensive relief to numerous family farms and businesses. However, a number of technical requirements of the current use valuation provision have resulted in incomplete relief being received by the owners of many family farms and other businesses for which the committee wished to provide. For these reasons, the committee has provided for a number of changes to the current use valuation provision to assist further in the preservation of family owned and operated farms and other businesses.

S.Rep. No. 97–144, 97th Cong. 1st Sess. at 133, *reprinted in* 1981 U.S.Code Cong. & Admin.News 105, 233. In describing the pre-death qualification requirements, the committee report emphasized the fact that under the proposed amendment the qualified use requirement would be satisfied "if either the decedent or a member of the decedent's family uses real property otherwise eligible for current use valuation as a farm for farming purposes or in another trade or business." *Id.* The provision making the amendment to § 2032A(b)(1) retroactive and the section providing the six month grace period were not discussed or explained.

The executor contends that the purpose of amending § 2032A(b)(1) was clearly to expand eligibility for favorable tax treatment by liberalizing the definition of "qualified real property." In order to give this expanded eligibility the fullest possible effect, Congress made the new definition retroactive to the time when special use valuation was first made part of the Code. This expansive purpose was also furthered by providing that the time for making the election would not expire until six months after enactment of ERTA for *any estate* whose time for making the election would have otherwise expired after July 28, 1980, the date on which the final treasury regulations under § 2032A were adopted.

So far as we can determine, the precise issue presented by this case has not been decided by any court. Although the question of a timely election was not at issue in *Schuneman v. United States*, 783 F.2d 694 (7th Cir.1986), the court did set forth its view of the effect of the 1981 amendment to the definition of qualifying use. In responding to an argument that retroactive application of the amendment would impose an additional condition on eligibility for special use valuation not present in the 1976 enactment, the court wrote:

Rather than restricting the eligibility for special use valuation, the 1981 amendment expanded eligibility by allowing the property to be used for a qualified use by either the decedent or a member of her family. Congress made the amendment retroactive so that all estates could benefit from the liberalization of the test.

*Id.* at 698 n. 2. The reference to "all estates" supports the executor's argument.

The question of a timely election was at issue in *Rath v. United States*, 733 F.2d 594 (8th Cir.1984), and *Bixler v. United*

*States,* 616 F.Supp. 177 (N.D.S.D.1985), both of which involved claims of retroactive qualification for special use valuation under § 421(k)(5)(B) of ERTA. However, the time for making an election in each of those cases had expired *before* July 28, 1980, and thus the taxpayers were outside the express language of § 421(k)(5)(B). Since the time for making an election in the instant case expired after July 28, 1980, as required by ERTA, the McCoy estate has a stronger claim to the retroactive provisions of ERTA than the taxpayers in *Rath* and *Bixler.*

## IV.

In construing any statute we look first to the language of the statute itself. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (footnote omitted). In enacting § 421(k)(5) Congress made certain provisions of ERTA retroactive. Included in the provisions made retroactive in § 421(k)(5)(A) was the amendment to 26 U.S.C. § 2032A, which defined qualified real property. Section 421(k)(5)(B) limited retroactivity under § 421(k)(5)(A) by making it applicable only to estates that had made a timely election under 26 U.S.C. § 2032A. However, the second sentence of § 421(k)(5)(B) made some elections timely that would not have been timely under § 2032A before amendment. For such estates, whose time for making an election would have otherwise expired after July 28, 1980, a new extended time for making an election was prescribed.

The only restriction on the extended time for making an election was that the time under unamended § 2032A would otherwise have expired after July 28, 1980. Congress could easily have modified the second sentence of § 421(k)(5)(B) to limit the six month grace period to those estates that could not have elected special use valuation under unamended § 2032A and that

became eligible for such election only by reason of the ERTA amendments. Instead, it used inclusive language, granting this new open season for election to "any estate" whose time for making the election would otherwise have expired after July 28, 1980. Thus, read literally, § 421(k)(5)(B) of ERTA made the McCoy estate's election on February 11, 1981 timely, since the grace period established by ERTA did not expire until February 13, 1981.

Since the clear purpose of the 1981 amendments was to expand eligibility for special use valuation and Congress chose to make the extended time for election applicable to "any estate" satisfying a requirement that was unrelated to the question of previous eligibility, it cannot be assumed that Congress intended to limit this privilege to those estates made eligible for special use valuation in the first instance by one or more of those amendments. Congress placed one explicit limitation on the right to benefit from the extended time for making an election ("would have otherwise expired after July 28, 1980"), and the McCoy estate satisfied that requirement. Under these circumstances we cannot rely on an unexpressed intent of Congress.

If, prior to the ERTA amendments, § 2032A had specified that qualified use by the decedent made an estate eligible for special use valuation, and the only change made by § 421(b)(1) of ERTA had been the addition of "or a member of the decedent's family," the Commissioner's arguments would carry more weight. In that case, the provisions of § 421(k)(5) would have been directly tied to a new feature of the amended statute. But this was not the case. Section 421(b)(1) amended 26 U.S.C. § 2032A by adding *"by the decedent or* a member of the decedent's family" following the words "qualified use." Thus, the amendment enlarged the definition by describing a use that clearly qualified before the amendment (use by the decedent) as well as a use that qualified for the first time under the amendment (use by a member of the decedent's family). When

§ 421(k)(5) made the amendment contained in § 421(b)(1) retroactive and extended the time for making an election, it made no distinction between estates that were eligible under unamended § 2032A and those first made eligible by the ERTA amendments.

The Commissioner relies on legislative history consisting of a House report that contained the following sentence:

> Estates for which estate tax returns were due and timely filed before enactment of the bill (ERTA) *which are eligible to reinstate (or make) elections because of these retroactive changes* will be allowed six months from the date of enactment of the bill in which to reinstate current use valuation elections....

H.R.Rep. No. 97–201, 97th Cong., 1st Sess. at 179 (emphasis added). This comment does not cover the situation in the present case. It appears to refer to estates that had filed a timely estate tax return, but had not included an election because they were not eligible for a special use valuation under unamended § 2032A, or had made elections that had been rejected by the Commissioner and thus were eligible for reinstatement. The McCoy estate is not covered by the quoted language. It sought to have its election, made on an estate tax return that was untimely under the original § 2032A, treated as timely because of the extension of the time for filing contained in § 421(k)(5)(B).

### V.

Our task is complicated by the fact that Congress amended § 421(k)(A)–(B) of ERTA on January 12, 1983 by the Technical Corrections Act of 1982, Pub.L. No. 97–448, 96 Stat. 2365 (1983). Thus we must deal with an amendment to an amendment. The precise changes made to section 421 can be found in the section of the Technical Corrections Act titled: Amendments Related to Section 421, subsection (b)(4)(B), Clarification of Effective Dates. After amendment, section 421(k)(5)(A)–(B) of ERTA read:

(5) CERTAIN AMENDMENTS MADE RETROACTIVE TO 1976.—(A) IN GENERAL.—The amendments made by subsections (b)(1), (j)(1), and (j)(2) [*amending subsecs. (b)(1), (e)(9), and (g) of this section and section 1040(a), (b) of this title*] and the provisions of subparagraph (A) of section 2032A(c)(7) of the Internal Revenue Code of 1954 (as added by subsection (c)(2)) shall apply with respect to the estates of decedents dying after December 31, 1976.

(B) TIMELY ELECTION REQUIRED.—Subparagraph (A) shall only apply in the case of an estate if a timely election under section 2032A was made with respect to such estate. *If the estate of any decedent would not qualify under section 2032A of the Internal Revenue Code of 1954 but for the amendments described in subparagraph (A) and the time for making an election under section 2032A with respect to such estate would (but for this sentence) expire after July 28, 1980, the time for making such election shall not expire before the close of February 16, 1982.*

(New language in italics). The changes were made effective as of the original adoption of ERTA in 1981. S.Rep. No. 97–592, 97th Cong. 2nd Sess. 22, *reprinted in* 1982 U.S.Code Cong. & Admin.News 4149, 4169.

The amendment to ERTA demonstrates that the six month grace period is to apply only to estates not eligible for special use election prior to enactment of ERTA *and* whose time for election would otherwise have expired after July 28, 1980. The second condition that the Commissioner asks us to find by implication in ERTA is made explicit by the Technical Corrections Act. We must determine which version governs the attempted election by McCoy's estate.

The title of the amendment to § 421(k)(5) in the Technical Corrections Act is "Clarification of Effective Dates." The legislative history makes clear that the purpose of the technical corrections is to conform the

amended provisions of ERTA to the original intent of Congress. "All amendments made by the bill are meant to carry out the intent of Congress in enacting the original legislation." S.Rep. No. 97–592, 97th Cong. 2nd Sess. 2, *reprinted in* 1982 U.S. Code Cong. & Admin.News 4149. In "Explanation of provisions," the Senate Report, at p. 22, states: "The bill clarifies that the right to make a late initial election or reinstate a previously revoked or disallowed election is available only if one of ERTA's four retroactive amendments applies to the estate." *Id.* at 4169. The retroactive ERTA amendment relied upon by the executor is the amendment to § 2032A(b)(1). However, that amendment was not needed to make the McCoy estate eligible for special use treatment, since the estate was already eligible under the unamended version of § 2032A. Thus the retroactive amendment to § 2032A(b)(1) does not apply to the estate.

The Technical Corrections Act was passed in the second session of the 97th Congress, which had adopted ERTA in its first session. It is settled that subsequent legislation declaring the intent of an earlier statute is entitled to significant consideration. *NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 275, 94 S.Ct. 1757, 1762, 40 L.Ed.2d 134 (1974). This is true even when a later Congress expresses its views of the work of an earlier Congress. *Bell v. New Jersey,* 461 U.S. 773, 784, 103 S.Ct. 2187, 2193, 76 L.Ed.2d 312 (1983). In this case the same Congress has explicitly clarified the meaning of legislation adopted the previous year. Where the amendment is adopted to clarify rather than change the meaning of earlier legislation, it should be accorded even greater weight. *Cf. In re Adams,* 761 F.2d 1422, 1427 (9th Cir.1985); *Barnes v. Cohen,* 749 F.2d 1009, 1015 (3d Cir.1984). See also *Canisius College v. United States,* 799 F.2d 18, 25 (2d Cir. 1986); *Temple University v. United States,* 769 F.2d 126 (3d Cir.1985) (amendments that retroactively applied changes to earlier statute held constitutional, and applied to defeat claims that would have prevailed under original version).

## VI.

We conclude that the statute should be construed to effectuate the clearly stated intent of Congress, even though the language used in ERTA at least pointed in the other direction. The McCoy estate was not deprived of the benefit of special use valuation by any "technical requirements" of § 2032A before amendment. The estate lost this valuable right because it did not make a timely election. Since the stated purpose of the ERTA amendments to § 2032A was to benefit estates that had been barred by technical requirements from making an election, there is no reason to extend the grace period to an estate that was eligible under original § 2032A, but merely failed to follow clearly stated requirements for making an election.

The executor also argues that the estate reinstated its election by filing a second estate tax return on February 9, 1982. He relies on § 421(k)(5)(C) of ERTA, which provides:

> (C) REINSTATEMENT OF ELECTIONS—If any election under section 2032A was revoked before the date of the enactment of this Act, such election may be reinstated within 6 months after the date of the enactment of this Act.

Since the McCoy estate failed to take any action that could be construed as a revocation of its first election prior to August 13, 1981, its second filing in 1982 cannot be considered a valid reinstatement under § 421(k)(5)(C).

The decision of the Tax Court is affirmed.