ESTATE OF PAULINE E. STRICKLAND, DECEASED, DELLA
ROSE SCHWARTZ, PERSONAL REPRESENTATIVE,
PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 41553-85.    Filed January 10, 1989.

*Charles N. Woodward,* for the petitioner.
*Juandell D. Glass,* for the respondent.

GOFFE, *Judge:* The Commissioner determined a deficiency in petitioner's Federal estate tax in the amount of $34,814.42.

After concessions by petitioner, the sole issue remaining for decision is whether petitioner is entitled to value real property in the decedent's estate at its special use value pursuant to section 2032A.[1]

## FINDINGS OF FACT

Some of the facts of this case have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by this reference.

Della Rose Schwartz, personal representative of the Estate of Pauline E. Strickland (the decedent), was a resident of Edmond, Oklahoma, at the time the Federal estate tax returns and the petition were filed in this case.

The decedent, Pauline E. Strickland, died on January 3, 1982, owning seven tracts of land which were being used for farming. At the time of her death, decedent was a resident and citizen of the United States.

---

[1]Unless otherwise indicated, all section numbers refer to the Internal Revenue Code as in effect as of the date of death of decedent.

Petitioner timely filed a Federal estate tax return, Form 706, on September 8, 1982. On October 4, 1982, petitioner filed an amended Federal estate tax return, Form 706. The applicable box was not checked on either return signifying that section 2032A special use valuation was elected. On the amended Federal estate tax return, Schedule A—Real Estate, petitioner elected to value five tracts of land owned by the decedent at her death at their special use value under section 2032A. Tract I consists of 20 acres of cultivated land, tract II consists of 54 acres of cultivated land and 26 acres of pasture land, tract III consists of 90 acres of cultivated land and 70 acres of pasture land, tract IV consists of 220 acres of pasture land, and tract V consists of 160 acres of pasture land. Tracts I and II are located in Grant County, Oklahoma, and tracts III, IV, and V are located in Logan County, Oklahoma.

A separate notice of election to value the above-described real property under section 2032A was submitted with the amended Federal estate tax return. The notice of election contained the following information:

ELECTION AND AGREEMENT TO HAVE CERTAIN
PROPERTY VALUED UNDER SECTION 2032A
FOR ESTATE TAX PURPOSES

1. DECEDENT:  Pauline E. Strickland
SSAN 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

2. QUALIFIED USE:  Decedent operated the real property subject to election as a farm.

3. REAL PROPERTY:  This election applied to Tract I, Tract II, Tract III, Tract IV and Tract V on Schedule A.

4. VALUATION:

|  | Market | 2032A |
|---|---|---|
| Tract I | 16,000 | 8,489 |
| Tract II | 80,000 | 24,786 |
| Tract III | 138,800 | 38,684 |
| Tract IV | 99,000 | 16,823 |
| Tract V | 77,400 | 12,495 |
| Total | 411,200 | 101,277 |

**5. ADJUSTED VALUE:** The adjusted value of all real property used in Qualified Use and passing to qualified heirs is $405,155. The adjusted value of all real property to be specially valued is $405,155.

**6. PERSONAL PROPERTY:** Personal property passing to qualified heirs and used in a qualified use includes only an undivided one half interest in Item 3, Schedule F, and the adjusted value thereof is $4,077.

**7. ADJUSTED GROSS ESTATE:** The adjusted value of the gross estate, as defined in Section 2032A (b)(3)(A) is $752,420.

**8. METHOD OF VALUATION:** The method of valuation was that method prescribed in section 2032A (e)(7). The subject real property has an established annual cash rental value of $45.00 per acre for cultivated (wheat) land and $9.375 per acre for pasture land. Real property average taxes were determined by averaging actual assessments for the years 1979, 1980, & 1981. The interest rate factor was provided by I.R.S., Oklahoma City, Oklahoma, to-wit: 10.26%.

**9. APPRAISALS:** Written appraisals of Fair market of real property are attached to Schedule A.

**10. OWNERSHIP:** Decedent owned all specially valued real property for at least 5 of the 8 years immediately preceding the date of decedent's death.

**11. QUALIFIED USE:** During the entire eight years immediately preceding decedent's death, Decedent owned and operated the specially valued property as a farm, and materially participated in the operation thereof.

**12. QUALIFIED HEIRS:** The following persons, both of whom are daughters of the decedent, will receive the following specially valued property:

Della Rose Schwartz
505 N. Blvd.
Edmond, Oklahoma 73034
SSAN: 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

| Tract | Market value | 2032A value |
|---|---|---|
| One-half Tract I | 8,000 | 4,245 |
| One-half Tract II | 40,000 | 12,393 |
| Tract III | 138,800 | 38,684 |

Willa Mae Abercrombie
Rt. 1, Box 16
Crescent, Oklahoma 73028
SSAN: 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

| Tract | Market value | 2032A value |
|---|---|---|
| One-half Tract I | 8,000 | 4,245 |
| One-half Tract II | 40,000 | 12,393 |
| Tract IV | 99,000 | 16,823 |
| Tract V | 77,400 | 12,495 |

13. AFFIDAVITS: Attached hereto are affidavits to the effect that decedent materially participated in the operation of her farm. Alos [sic], attached are Forms 4835 of decedent for years 1979 and 1980 (most recent available).

14. LEGAL DESCRIPTION: The legal description of specially valued property is reflected as Tracts I, II, III, IV and V on Schedule A.

15. AGREEMENT: WILLA MAE ABERCROMBIE, with respect to Tracts I, II, IV and V of Schedule A, and DELLA ROSE SCHWARTZ, with respect to Tracts I, II and III of Schedule A, being the only persons having an interest in said tracts, hereby agree and consent to the application of I.R.C. Section 2032A (c) in the event of certain early dispositions of the property or early cessation of the qualified use; consent to personal liability for taxes imposed thereunder; and designate themselves, at the addresses above, as agents in all dealings with Internal Revenue Service on matters arising under Section 2032A.

With respect to the method of valuation, petitioner submitted, with the amended Federal estate tax return, a lease for a period of June 1, 1982, through May 31, 1983, covering comparable pasture land adjoining tract III. Petitioner submitted an opinion letter from the vice president of Farmers & Merchants Bank in Crescent, Oklahoma, setting forth a cash rental value of $40 to $45 per acre per year for the cultivated land for a period subsequent to decedent's death. Other comparable cultivated and pasture land existed in the geographical area of the respective tracts, but petitioner did not submit evidence of them. Taxes paid on tracts III, IV, and V for the years 1979, 1980, and 1981 were submitted by petitioner in a letter from the Logan County treasurer's office. In addition, copies of receipts were submitted from the Grant County treasurer's office for taxes paid on tracts I and II for the years 1979, 1980, and 1981.

The agreement as to special use valuation was filed with the amended Federal estate tax return and was signed by all the required parties.

On March 8, 1984, and again on May 30, 1984, petitioner was notified by letter from respondent, that the information and documentation submitted with respect to the special use valuation was not sufficient and a request was made for the required information. Petitioner responded on October 3,1984, stating that petitioner was determining whether or not to contest the disallowance of the section 2032A election.

On October 23, 1986, petitioner was informed by letter that respondent had not yet received the required information and documentation to support the special use value. On January 7, 1987, petitioner submitted two documents in response to respondent's request. One document was the same cash lease submitted with the notice of election from comparable property adjoining tract III, the only difference being that the lease covered a period from June 1978 through 1984. The second document was a statement from the Logan County treasurer setting forth the taxes paid in 1981 on this comparable parcel.

On February 17, 1987, petitioner was notified that it failed to qualify for the special use valuation provided under section 2032A, even after taking into account the two

documents previously submitted by letter dated January 7, 1987. No further documentation was submitted by petitioner.

In the statutory notice of deficiency, the Commissioner determined that petitioner was not entitled to the special use valuation under section 2032A because of petitioner's failure to properly document and substantiate the section 2032A election.

OPINION

The value of property included in the gross estate of a decedent is usually the fair market value of the property interest as of the date of death of the decedent. Sec. 2031. Prior to 1976, there were no provisions in the Internal Revenue Code that permitted any other valuation. Section 2032A, which was adopted as part of the Tax Reform Act of 1976, provides an alternative means for valuing real property used in farming operations or other closely held businesses. Tax Reform Act of 1976, Pub. L. 94-455, sec. 2003(a), 90 Stat. 1856. The purpose in adopting section 2032A was to provide an alternative to "highest and best use" for valuing real property used in family farming operations or closely held businesses. *Estate of Johnson v. Commissioner*, 89 T.C. 127, 129 (1987); *Estate of Coon v. Commissioner*, 81 T.C. 602, 608 (1983).

Under section 2032A(a)(1)(B), the executrix must elect this special use valuation on a Federal estate tax return. Sec. 2032A(d)(1); sec. 20.2032A-8, Estate Tax Regs. A notice of election must be filed with the Federal estate tax return setting forth 14 items of information. In addition, an agreement must be filed, signed by each person in being who has an interest in any property designated in such agreement, consenting to the application of an additional estate tax under subsection (c) with respect to such property. Sec. 2032A(d)(2). The estate must also meet a number of other conditions to be eligible for special use valuation.[2] We must first decide whether a proper election has been filed.

---

[2] The decedent must have been a citizen or a resident of the United States, and the subject property must be located in the United States. Sec. 2032A(a)(1)(A); sec. 2032A(b)(1). The real property must have been used as a farm or in a trade or business by the decedent or by a member of the decedent's family, and the decedent or a member of the decedent's family must have materially participated in the operation of the farm or the business. Sec. 2032A(b)(1)(A)(i)

A section 2032A election need not be made as to all real property in the estate, but only sufficient property to satisfy the threshold requirements of section 2032A(b)(1).[3] Sec. 20.2032A-8(a)(2), Estate Tax Regs. The election is to be made on the Federal estate tax return in the manner prescribed by the regulations. Sec. 2032A(d)(1). Section 1025 of the Deficit Reduction Act of 1984 retroactively amended section 2032A(d)(3) to provide that the Secretary shall prescribe procedures that give the executrix of the estate of a decedent dying after 1976 a reasonable time within which to cure defects in a section 2032A election. Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 1025(a), 98 Stat. 1030.[4] In any case in which the executrix timely files an election in "substantial compliance" with the regulations but which does not contain the required information, the executrix will have a reasonable time, not to exceed 90 days after notification of such failures, to provide all of the information. Sec. 2032A(d)(3).

Section 20.2032A-8(a)(3), Estate Tax Regs., delineates 14 items of information that petitioner must submit with the Federal estate tax return:

   (i) The decedent's name and taxpayer identification number as they appear on the estate tax return;
   (ii) The relevant qualified use;
   (iii) The items of real property shown on the estate tax return to be specially valued pursuant to the election (identified by schedule and item number);
   (iv) The fair market value of the real property to be specially valued under section 2032A and its value based on its qualified use (both values determined without regard to the adjustments provided by section 2032A(b)(3)(B));

---

and (ii). In addition, the property must pass to a qualified heir, who must be a member of the decedent's family. Ownership and use requirements must be satisfied as set forth in the statute to avoid recapture of part of the tax savings resulting from special use valuation. Sec. 2032A(c).

   [3]In addition to the requirements listed above, sec. 2032A includes requirements regarding the makeup of the estate, as set forth in sec. 2032A(b)(1)(A) and (B). These percentage requirements limit tax relief to those situations where the family farm or business is a major asset, in terms of value, in the decedent's estate. We need not address this issue for this information was sufficiently set forth in petitioner's notice of election.

   [4]Petitioner erroneously contends on brief that because the passage of sec. 1025(a) of the Deficit Reduction Act of 1984 was subsequent to the date of the amended Federal estate tax return, the 90-day requirement has no application because it was not in existence at the time of the filing or auditing of the amended Federal estate tax return. Petitioner has failed to take notice of the fact that sec. 1025(a) was made retroactive to apply to decedents dying after Dec. 31, 1976. Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 1025(b)(1), 98 Stat. 1030.

(v) The adjusted value (as defined in section 2032A(b)(3)(B)) of all real property which is used in a qualified use and which passes from the decedent to a qualified heir and the adjusted value of all real property to be specially valued;

(vi) The items of personal property shown on the estate tax return that pass from the decedent to a qualified heir and are used in a qualified use under section 2032A (identified by schedule and item number) and the total value of such personal property adjusted as provided under section 2032A(b)(3)(B);

(vii) The adjusted value of the gross estate, as defined in section 2032A(b)(3)(A);

(viii) The method used in determining the special value based on use;

(ix) Copies of written appraisals of the fair market value of the real property;

(x) A statement that the decedent and/or a member of his or her family has owned all specially valued real property for at least 5 years of the 8 years immediately preceding the date of the decedent's death;

(xi) Any periods during the 8-year period preceding the date of the decedent's death during which the decedent or a member of his or her family did not own the property, use it in a qualified use, or materially participate in the operation of the farm or other business within the meaning of section 2032A(e)(6);

(xii) The name, address, taxpayer identification number, and relationship to the decedent of each person taking an interest in each item of specially valued property, and the value of the property interests passing to each such person based on both fair market value and qualified use;

(xiii) Affidavits describing the activities constituting material participation and the identity of the material participant or participants; and

(xiv) A legal description of the specially valued property.

We must decide whether petitioner "substantially complied" with the regulations in submitting a notice of election which did not contain all of the required information. If we find that petitioner has "substantially complied" with the regulations, then, in determining whether petitioner completed the notice of election, we will take into account any documents submitted by petitioner within 90 days after notification by the Internal Revenue Service. If petitioner has not "substantially complied" with the regulations, section 2032A will not apply to the valuation of the respective properties and petitioner must value the five tracts of land listed in the amended Federal estate tax return, Schedule A—Real Estate, at the fair market value on the date of decedent's death.

It is well established that the Commissioner's determination is presumed to be correct and that the taxpayer has

not only the burden of proving error in that determination, but the burden of producing evidence from which a proper determination can be made. Most of the information required under section 20.2032A-8(a)(3), Estate Tax Regs., can be ascertained from petitioner's amended Federal estate tax return and the notice of election submitted with the return. However, with respect to the section 20.2032A-8(a)(3)(viii), Estate Tax Regs., method of determining special value based on use, petitioner failed to supply the information and documentation necessary to substantiate the special value based on the use of the property.

In determining special value based on use, section 2032A provides several methods for valuing farms. Sec. 2032A(e)(7); sec. 2032A(e)(8); sec. 20.2032A-4, Estate Tax Regs. The first method, capitalization of rents, measures the present value of the future cash-flows from the real property by using cash rent figures for the last 5 years. Sec. 2032A(e)(7)(A). The capitalization of rents formula is the excess of the average annual gross cash rental for comparable land used for farming purposes and located in the locality of such farm over the average annual State and local real estate taxes for such comparable land divided by the average annual effective interest rate for all new Federal Land Bank loans.[5] Each average annual computation shall be made on the basis of the 5 most recent calendar years ending before the date of decedent's death. Sec. 2032A(e)(7)(A); sec. 20.2032A-4(a), Estate Tax Regs.

Gross cash rental is the amount of cash received during the year for the use of actual tracts of comparable farmland in the same locality, undiminished by any expenses or liabilities associated with the farm operation. Sec. 20.2032A-4(b)(1), Estate Tax Regs. In using this method, the executrix must identify to the Internal Revenue Service actual comparable property for all specially valued property and cash rentals from that property. Sec. 20.2032A-4(b)(2)(i), Estate Tax Regs. If it is established that there is no comparable land from which the annual gross cash rentals

---

[5]The Internal Revenue Service issues an annual revenue ruling setting forth the effective interest rate for each of the 12 regional Federal Land Bank Districts. The effective interest rate for the Federal Land Bank District in which the respective property is located, for 1982, was 10.26 percent. Rev. Rul. 82-104, 1982-1 C.B. 129, 130.

may be determined, then the average-net-share-rental method may be used. Sec. 2032A(e)(7)(B)(i).

The second method of valuation under section 2032A is prescribed under section 2032A(e)(8). This method may be used when it is established that there is no comparable land from which the average annual gross cash rental may be determined, and no comparable land from which the average net share rental may be determined, or where the executor elects to value the farmland under this method. Sec. 2032A(e)(7)(C)(i) and (ii).

Petitioner elected to value the respective property under section 2032A(e)(7)(A).[6] In the notice of election, petitioner stated that the cultivated land had an annual cash rental value of $45 per acre and the pasture land $9.375 per acre. However, petitioner did not provide any substantiation with respect to the cultivated land price. Petitioner bases the cash rental value of the respective property on an opinion letter from a vice president of the Farmers & Merchants Bank of Crescent, Oklahoma. Section 20.2032A-4(b)(2)(iii), Estate Tax Regs., prohibits the use of appraisals in this manner. In addition, petitioner does not state the time period involved. The letter relates to the year subsequent to decedent's death, rather than the preceding 5 years. With respect to the pasture land, petitioner produced a lease from a comparable parcel in Logan County; however, the annual gross cash rental values also relate to the year subsequent to the decedent's death. Section 2032A(e)(7)(A) requires this computation to be made on the basis of the 5 years preceding the decedent's death. Sec. 20.2032A-4(a), Estate Tax Regs.

Petitioner submitted tax statements for only 3 of the prescribed 5 years preceding the decedent's date of death. The tax statements were those taxes paid on tracts I, II, III, IV, and V. Petitioner was required to submit tax

---

[6]Petitioner has presented an utterly confusing picture as to which method of valuation is being elected. In the notice of election, petitioner merely states that an election is being made under sec. 2032A(e)(7). On brief, petitioner argues that sec. 2032A(e)(7)(A) valuation was elected, then contends that evidence was submitted to the Internal Revenue Service regarding net share rental under sec. 2032A(e)(7)(B). Petitioner then submits a formula based upon "average production" in bushels per acre and in price per bushel. Finally, petitioner contends that "every effort was made to value the land in accordance with the formula contained in [sec. 2032(e)(7)] (A)."

figures with respect to comparable real property, not on the tracts themselves. Sec. 20.2032A-4(a)(1), Estate Tax Regs.

Petitioner has failed to identify comparable real property, annual gross cash rentals, and State and local taxes therefrom for the requisite 5 calendar years preceding the decedent's date of death. It is impossible for the Court to ascertain from petitioner's amended Federal estate tax return and notice of election the special use value of the respective properties under section 2032A(e)(7)(A).

We must now decide whether petitioner's failure to properly document and substantiate the method used in determining the special value based on use is fatal under the "substantial compliance" language of section 2032A(d)(3)(B).

Neither party has cited any authority addressing this specific point. We are aware of a Memorandum Opinion of this Court in which almost none of the required information of section 20.2032A-8(a)(3), Estate Tax Regs., was submitted in a timely filed original or amended Federal estate tax return in which special use valuation was elected.[7] In the present factual situation, however, 13 of the 14 items have been submitted in the notice of election in a timely filed amended Federal estate tax return. We must therefore decide whether by omitting the one item which is essential to substantiate the special value based on use of the respective property, petitioner's notice of election has failed to "substantially comply" with the regulations under section 2032A.[8]

In *Estate of Gunland v. Commissioner*, 88 T.C. 1453 (1987), we found that a failure to attach an agreement of the type referred to in section 2032A(d)(2) to an original Federal estate tax return defeated an attempted election of section 2032A special use valuation because the taxpayer did not "substantially comply" with the regulations. Although petitioner, in the instant case, filed an agreement as referred to in section 2032A(d)(2), our discussion of the

---

[7]*Estate of Killion v. Commissioner*, T.C. Memo. 1988-244.

[8]This is not a case in which no election was attempted on a timely original Federal estate tax return and an amended return was filed after the due date of the original return, including extensions containing a sec. 2032A notice of election. *Carmean v. United States*, 4 Cl. Ct. 181 (1983); *Estate of McCoy v. Commissioner*, T.C. Memo. 1985-509, affd. 809 F.2d 333 (6th Cir. 1987); *Estate of Williams v. Commissioner*, T.C. Memo. 1984-178; *Estate of Young v. Commissioner*, T.C. Memo. 1983-686; *Estate of Boyd v. Commissioner*, T.C. Memo. 1983-316.

"substantial compliance" language in *Estate of Gunland* is instructive. In applying the "substantial compliance" language of section 2032A, we found that:

The test for determining the applicability of the substantial compliance doctrine has been the subject of a myriad of cases. The critical question to be answered is whether the requirements relate "to the substance or essence of the statute." *Fred J. Sperapani,* 42 T.C. 308, 331 (1964). If so, strict adherence to all statutory and regulatory requirements is a precondition to an effective election. *Lee R. Dunavant,* 63 T.C. 316 (1974). On the other hand, if the requirements are procedural or directory in that they are not of the essence of the thing to be done but are given with a view to the orderly conduct of business, they may be fulfilled by substantial, if not strict, compliance. See *Lee R. Dunavant, supra; Georgie S. Cary,* 41 T.C. 214 (1963); *Columbia Iron & Metal Co.,* 61 T.C. 5 (1973). [*Estate of Gunland v. Commissioner, supra* at 1458-1459 (quoting *Taylor v. Commissioner,* 67 T.C. 1071, 1077-1078 (1977)).]

We found that section 20.2032A-8(a)(3), Estate Tax Regs., is not a "procedural" or "directory" regulation. "Moreover, the substantial compliance doctrine is not applicable where, as here, the statute or regulation provides with detailed specificity the manner in which an election is to be made." *Estate of Gunland v. Commissioner, supra* at 1459 (citing *Taylor v. Commissioner,* 67 T.C. at 1080; *Thorrez v. Commissioner,* 31 T.C. 655 (1958), affd. 272 F.2d 945 (6th Cir. 1959)). Based upon this analysis, we found that "substantial compliance" was insufficient to secure the benefits of special use valuation.[9] *Estate of Gunland v. Commissioner, supra* at 1459.

With respect to the method of valuation under section 2032A, section 20.2032A-8(a)(3)(viii), Estate Tax Regs., provides that the method used in determining the special use valuation shall be set forth in the notice of election. Section 2032A(e)(7)(A)(i) and (ii), provides the formula for determining the value of a farm under the gross cash rental method. Section 20.2032A-4, Estate Tax Regs., further defines each requirement in the formula in detail. Not only do section 2032A(e)(7)(A) and section 20.2032A-8(a)(3), Estate Tax Regs., provide specificity in the manner in which an election

---

[9] We are aware of other decisions which generally hold that strict compliance with sec. 2032A is required to receive statutory relief. *Estate of Cowser v. Commissioner,* 736 F.2d 1168 (7th Cir. 1984), affg. 80 T.C. 783 (1983); *Estate of Abell v. Commissioner,* 83 T.C. 696 (1984); *Estate of Coon v. Commissioner,* 81 T.C. 602 (1983); *Estate of Geiger v. Commissioner,* 80 T.C. 484 (1983).

is to be made, i.e., the method used in determining the special value based on use; but, section 20.2032A-4, Estate Tax Regs., further delineates those elements which must be used in valuing a farm under section 2032A(e)(7)(A). Just as the "requisite agreement is an integral part of the statutory scheme in that it subjects all qualified heirs to potential recapture liability" (*Estate of Gunland v. Commissioner, supra* at 1459), so too is the method of valuation under section 2032A an integral part of the statutory scheme. It is the method of valuation which underlies the purpose of the statute—to permit a method of special valuation of property based on actual use, rather than fair market value, for estate tax purposes.

Petitioner submitted, with the timely amended Federal estate tax return, one lease from a comparable parcel, for a period subsequent to the decedent's date of death. The only tax information submitted was those taxes paid on the respective tracts themselves and not on comparable property. Thus, we find that petitioner cannot avail itself of the "substantial compliance" language of section 2032A because it has failed to "substantially comply" with the detailed specificity of section 20.2032A-8(a)(3), Estate Tax Regs., in failing to substantiate the method used in determining the special value based on use, as set forth in section 2032A(e)(7)(A) and section 20.2032A-4, Estate Tax Regs.

We are aware that Congress believed, in enacting section 2032A(d)(3), that the Internal Revenue Service was being too strict in applying the regulations to disallow elections on the basis of technical mistakes in the agreements or notice of election information. Senate Floor Amendment, Deficit Reduction Act of 1984, 130 Cong. Rec. S4318 (daily ed. Apr. 11, 1984) (statement of Sen. Dixon). Section 2032A(d)(3) provided that the Secretary of the Treasury was to develop procedures to permit estates to perfect election notices which "substantially complied" with the regulations. H. Rept. 98-861 (Conf.) (1984), 1984-3 C.B. (Vol. 2) 494. However, in the present factual situation, we are not dealing with a technical mistake or omission in the notice of election. The omission of the method used in determining the special value based on use, and the elements used in

calculation of such is not the type of minor omission or mistake addressed in section 2032A(d)(3).

Illustrations of the type of information that may be supplied after the initial filing of a notice of election are omitted social security numbers and addresses of qualified heirs and copies of written appraisals of the property to be specially valued. This provision does not, however, permit such appraisals to be obtained only after the estate tax return is made. Rather, the provision simply permits the submission of previously obtained appraisals. Likewise, a notice of election which does not provide a legal description of the property to be specially valued may not be perfected unless the notice, as initially filed with the estate tax return, described the property with reasonable clarity, even though the full legal description was not provided. [H. Rept. 98-861 (Conf.) (1984), 1984-3 C.B. (Vol. 2) 495.]

We do not hold that the failure to submit 1 out of 14 items in a notice of election will never meet the "substantial compliance" standard of section 2032A(d)(3). Although section 20.2032A-8(a)(3), Estate Tax Regs., is not a "procedural" or "directory" regulation, there are certain informational items that do not relate to the substance or essence of the statute. We have set some of them out in our discussion of the legislative history above. We hold that the estate has not "substantially complied" with the regulations under section 2032A because of its failure to supply the information and documentation necessary to determine the special value based on use as found in section 2032A(e)(7)(A) and section 20.2032A-4, Estate Tax Regs.

Petitioner contends that there was no comparable land from which the average annual gross cash rental values could be determined. It argues that the net-share-value method under section 2032A(e)(7)(B) should be used. In support of this, petitioner contends that testimony by petitioner's witnesses demonstrated a lack of comparable land from which average annual gross cash rental values could be determined. We find that this testimony does not corroborate petitioner's contentions.

Petitioner contends that Mr. Ben Abercrombie testified that he had attempted to locate written cash leases for property in the area, but was unable to locate any leases other than the one which was submitted to the Internal Revenue Service (Mr. Abercrombie refers to this lease as "leases to the pasture land to the west of us" in his

testimony). As we noted, this lease was for a period subsequent to the decedent's death, June 1, 1982, through May 31, 1983. We read Mr. Abercrombie's testimony differently.

Q. Mr. Abercrombie, did you make an effort to locate cash leases on both cultivated land and pasture land in preparation, not only for this case, but all through this proceeding?

A. Yes. On the land that surrounded our land.

Q. Okay. Were you able to locate any cash leases?

A. The cash leases I knew about, I was unable to get any documents on.

Q. Okay. Did you actually talk to people and see if they had cash—had written cash leases?

A. Yes. We contacted our neighbor to the north there. She has a cash lease, and we could not get papers from her. But I did get copies of leases on pasture land to the west of us.

\* \* \* \* \* \* \*

Q. Mr. Abercrombie, did you—were you able to locate any other cash leases?

A. I also tried to check on the quarter east of us which belonged to a real estate man in Enid, and he has sold that, and I couldn't complete my check on that because the new owner doesn't live there.

Q. You were not able to find a cash lease in this instance.

A. On him, no.

From Mr. Abercrombie's testimony, cash leases existed on both cultivated land and pasture land, but he was not able to obtain any documents on them. In addition, it appears that Mr. Abercrombie visited neighboring farms that bordered the cultivated land and the pasture land, but he never investigated other properties.[10] Section 20.2032A-4(d), Estate Tax Regs., specifically authorizes the factors to be taken into account in locating comparable land. There exists no provision limiting the scope of comparable property to those lands adjoining the land(s) in question.

Petitioner's second witness, Mr. Dwayne Johnson, was a farmer who participated in the operation and management of the cultivated land and pasture land in question. Petitioner contends that Mr. Johnson testified that it was not common for cultivated land to be leased on a cash

---

[10]We are unable to ascertain what tract of land Mr. Abercrombie was referring to when he referred to "our land." However, for purposes of this analysis, it is not relevant which specific tract is referred to, as no evidence of comparable property was produced.

basis, and that such leases are rare. We read Mr. Johnson's testimony differently.

Q. Is it common to lease pasture land on a cash rental basis?

A. Yes. Mostly. All of the leases, nearly, from August 1 until August 1 on pasture.

Q. Okay. How about cultivated land? What is the common method of leasing or renting cultivated land?

A. I would say the majority is leased on a crop one-third or two-thirds share, but some is rented for cash, too.

Q. Do you have any personal knowledge of any cash rental leases that either existed or have existed concerning cultivated land?

A. Well, I know of some. Yes.

Q. Okay. What are those that you know of? Can you recall?

A. I really couldn't tell you what price they paid because I am not that familiar with them. It varies, the type of ground and location, and so forth.

Although cash leases may not be the most common method for leasing cultivated land, Mr. Johnson was aware of the existence of some of these cash leases, which petitioner has failed to produce.

It is apparent that there were cash leases for comparable cultivated land and pasture land from which average annual gross cash rental values could be computed. Petitioner failed to produce evidence of them in her notice of election filed with the amended Federal estate tax return. We hold, therefore, that because comparable land from which average annual gross cash rental values could be submitted, petitioner, in electing to use section 2032A(e)(7)(A), may not now choose to value the respective tracts under section 2032A(e)(7)(B).

In an effort to substantiate the values reflected in the notice of election, item 8, petitioner has devised a formula to value the respective tracts based upon "average production" in bushels per acre and in price per bushel. We need only point out that section 20.2032A-4(b)(2)(iii), Estate Tax Regs., prohibits the use of appraisals or other statements regarding rental value and area-wide averages in determining the value of real property under section 2032A(e)(7).

Petitioner argues that information pursuant to section 2032A(e)(7) was submitted and to the extent such information is not available, section 2032A(e)(7)(C) provides that such information as is available can be used to establish

special use value. We do not agree with petitioner's interpretation of section 2032A(e)(7)(C).

> (C) EXCEPTION.—The formula provided by subparagraph (A) shall not be used—
>> (i) where it is established that there is no comparable land from which the average annual gross cash rental may be determined and that there is no comparable land from which the average net share rental may be determined, or
>> (ii) where the executor elects to have the value of the farm for farming purposes determined under paragraph (8).

The statute provides that, if it can be demonstrated that no comparable property exists for either method, section 2032A(e)(7)(A) or (B) shall not be used. Furthermore, neither of these valuation methods shall be used if the executor elects to use section 2032A(e)(8). Petitioner has not elected to value the respective tracts under section 2032A(e)(8). In addition, we find that comparable property existed from which the average annual gross cash rental values could have been determined. Petitioner's contentions belie the statute.

It is important to note that there is an apparant inconsistency between the statute, at section 2032A(e)(7)(C)(i), and the regulations, at section 20.2032A-4(b)(2), Estate Tax Regs. The statute suggests that the executrix must make an affirmative showing that there is no comparable land from which the average annual gross cash (or net share) rental may be determined (sec. 2032A(e)(7)(C)(i)), and that the executrix may value the respective property under section 2032A(e)(8) only if such an affirmative showing is made.[11] Under the regulations, the executrix may, by "default," use section 2032A(e)(8) to value the respective property. Under the regulations, "If the executor does not identify such [comparable] property and cash rentals, all specially valued real property must be valued under the rules of section 2032A(e)(8)." Sec. 20.2032A-4(b)(2), Estate Tax Regs. Our holding rests upon the interpretation of the statute at section 2032A(e)(7)(C)(i). However, if we were to follow the regulations at section 20.2032A-4(b)(2), Estate Tax Regs., the result would not be

---

[11]This assumes that the executrix has not initially made an election under sec. 2032A(e)(7)(ii) to value the property under sec. 2032A(e)(8).

different.[12] Under the regulations, petitioner would be allowed to value the respective property under section 2032A(e)(8) because it failed to identify comparable property and cash rentals therefrom. In this case, the only evidence available to value the respective property is the fair market value of the property as reported in the original Federal estate tax return. Thus, a valuation pursuant to section 2032A(e)(8) will equal the fair market value of the property on the date of decedent's death.

We hold that petitioner has not "substantially complied" with the regulations under section 2032A in attempting to value the property of the decedent under section 2032A(e)(7)(A). Petitioner failed to identify comparable property, annual gross cash rentals, and State and local taxes therefrom for the requisite 5 years prior to the decedent's date of death. Thus, it is impossible to compute average annual gross cash rentals under section 2032A(e)(7)(A). In addition, the evidence establishes that comparable tracts of land, from which gross cash rental values could be ascertained, existed in the geographical area of the respective tracts. Petitioner is, therefore, precluded from utilizing the net share rental method of valuing the respective tracts. Sec. 2032A(e)(7)(B). Because petitioner has not "substantially complied" with the regulations, section 2032A will not apply to the valuation of the respective tracts and petitioner must value the five tracts of land listed in the amended Federal estate tax return, Schedule A—Real Estate, at the fair market value on the date of decedent's death.

In order to allow the deduction of any administration expenses occasioned by this litigation,

*Decision will be entered under Rule 155.*

------

[12]If sec. 2032A(e)(8) is used for valuation purposes, none of the documentation requirements of sec. 2032A(e)(7)(A) would be required. Therefore, the only disputed issue remaining would be whether there was "material participation" by the decedent in the operation of the farm as required by sec. 2032A(b)(1)(C)(ii). We assume that this standard would have been met for purposes of this analysis only. We express no opinion as to whether petitioner "materially participated," as our holding does not require us to reach this issue.