ESTATE OF JOSEPH A. SEQUEIRA, DECEASED, GEORGE SEQUEIRA AND ALBERT SEQUEIRA, EXECUTORS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sequeira v. Commissioner
Docket No. 16264-91.
United States Tax Court
T.C. Memo 1995-450; 1995 Tax Ct. Memo LEXIS 450; 70 T.C.M. (CCH) 761; September 21, 1995, Filed *450 Decision will be entered under Rule 155. P elected to value four parcels of land, owned by decedent at the time of death, under the special use valuation provision of sec. 2032A, I.R.C. The election was made on the original timely filed Federal estate tax return filed for the estate. A recapture agreement was also attached. R determined that P's election was invalid, arguing that P submitted a notice of election and recapture agreement not containing all of the information required under secs. 20.2032A-8(a) (3) and 20.2032A-4, Estate Tax Regs. 1. Held, P failed to "substantially comply" with the regulations under sec. 2032A, I.R.C., in submitting a notice of election not containing all of the required information. 2. Held further, P is required to value the subject properties at their fair market values on the date of decedent's death under sec. 2031(a), I.R.C.
John A. McNamara, for petitioner. Debra Bowe, for respondent. WRIGHT, Judge WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined that there is a deficiency in petitioner's Federal estate tax in the amount of $ 297,461. The sole issue for our decision is whether petitioner made *451 a valid election for special use valuation under section 2032A. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated by this reference. Joseph A. Sequeira (decedent) died on June 2, 1987. Executor George Sequeira resided in Petaluma, California, at the time the petition was filed in this case. Executor Albert Sequeira died on August 9, 1990. Form 706, U.S. Estate Tax Return (original return), was timely filed on September 2, 1988. On Schedule A of the original return, decedent's interest in four parcels of real property was reported, including a one-half interest in 900 acres of land in Sonoma County, California (Jenner property), a one-half interest in 3,500 acres of land in Mendocino County, California *452 (Willits property), a one-half interest in property located in Solano County, California (Dixon property), and a 40-percent interest in approximately 224 acres of land in Sonoma County, California (Old Adobe property). The date of death fair market value of decedent's interest in each of the properties was reported on the original return as follows: Property
Date Of Death Value
Jenner
$ 360,000
Willits
431,250
Dixon
243,000
Old Adobe
40,000
An Agreement to Special Use Valuation (recapture agreement), signed by decedent's heirs, was attached to the original return. The recapture agreement did not contain a designation of an agent for the heirs, the agent's signature, or the agent's address. At the request of respondent, a copy of the recapture agreement, including the agent designation signed by executor George Sequeira, was submitted to respondent during the course of examination. The notice of election listed the Jenner, Willits, Dixon, and Old Adobe properties as used in a qualified use, and they were specially valued on the return. Listed on the notice of election were the above-enumerated market values of the four properties. Although the notice of election stated *453 that copies of appraisals showing the full values of the four properties were attached, no such appraisals were attached to the notice or accompanied the original return. Petitioner claims that in April 1988, Mr. George Sequeira contacted and retained Mr. Rudy Mora to appraise the Willits property and provide its cash rental value. No compensation was given to Mr. Mora for his claimed services. Petitioner claims that Mr. Mora provided this service at no charge in order to preserve business relationships. Petitioner claims that Mr. Mora's appraisal was reduced to writing on July 20, 1988. Petitioner claims that the alleged appraisal remained in Mr. Mora's files until requested by Ms. Celeste Sequeira, a beneficiary under the estate. Mr. Mora's alleged appraisal, unsigned, contains in its entirety the following: July 20, 1988 Sequeira Ranch located on Sherwood Rd. Willits Calif. 3500 + acres with a fair market value of approximately $ 862,500.00 or $ 246.00 per acre. These properties consisting mainly [of] pasture land used for cattle grazing.
Petitioner claims that in the summer of 1988, Mr. Tony Brazil was hired to appraise the Jenner, Dixon, and Old Adobe properties *454 and provide the cash rental values for such properties. No compensation was given to Mr. Brazil for his claimed appraisal service. Petitioner claims that Mr. Brazil provided this service at no charge in order to preserve business relationships. Petitioner further claims that Mr. Brazil's written appraisal, prepared in July 1988, remained in his files until requested by Ms. Celeste Sequeira after the filing of the original return. Mr. Brazil's alleged appraisal, written on an invoice form and unsigned, contains in its entirety the following information: Appraisal for Sequeira Ranches July 1988
Dixon Ranch appr. 180 acres $ 480,000
Adobe Rd. Ranch Petaluma approx. 200 acres
$ 1,000 per acre 200,000
Coast Ranch-Jenner approx. 900 acres x $ 800 per acre 720,000
On October 12, 1988, an Inventory and Appraisement, signed by California probate referee Mr. Michael Torr, was filed with the Superior Court of California, Sonoma County, during the probate of decedent's estate. The Inventory and Appraisement listed the date of death values of decedent's interests in the four properties as follows: Property
Appraised Date Of Death Value
Jenner
$ 387,500
Willits
375,000
Dixon
125,000
Old Adobe
88,000
*455 An appraisement is a summary of assets in an estate and a compilation of appraisals performed by the State of California Inheritance Tax Referee of the county in which the property to be valued is located. The subject properties were located in three different counties in California. The appraisement was submitted to respondent during the course of examination. An amended Form 706 was received by respondent on April 14, 1989 (first amended return), and a second amended Form 706 (second amended return) was received by respondent on August 25, 1992. The date of death values of the four properties as listed on the original return were revised on the first amended return to reflect the values as determined by probate referees Mr. Torr, Mr. Hinkle, and Mr. Simonds. On June 20, 1989, respondent notified petitioner by letter that the initial examination had commenced and requested certain information. The letter made no mention that the election was invalid or that petitioner was required to cure any defects in the election within a specified period of time. The section 2032A values and the date of death fair market values of the subject properties, as stipulated by the parties, are as *456 follows: Property
Sec. 2032A Value
Fair Market Value
Jenner
$ 114,228
$ 387,500
Willits
110,543 375,000
Dixon
36,847
125,000
Old Adobe
51,882
176,000
313,500
1,063,500
Respondent accepts the fair market value figures of the subject properties based upon the findings in the Inventory and Appraisement. Mr. Robert Koenitzer of Redwood Empire Appraisal located in Petaluma, California, was hired by the estate sometime in 1990 to prepare a Gross Cash Rental Analysis appraisal of the subject properties. Mr. Koenitzer submitted a written report based on such data. Mr. Koenitzer's completed report, dated April 26, 1991, involved a different estate than the one in the instant case, a different date of death, and a valuation period from calendar year 1985 through 1989. A supplemental report, completed by Mr. Koenitzer on May 30, 1991, reflects a valuation period of 1981 through 1985 used for gathering rental data with respect to properties comparable to the four properties in the instant case. Both written reports were presented to respondent during the Appeals process. On June 20, 1989, Mr. Marc Samuelson, estate tax attorney for the Internal Revenue Service (IRS), *457 issued a letter to Mr. Leland Dibble, the attorney who prepared petitioner's estate tax returns, informing Mr. Dibble that petitioner's Form 706 had been assigned to him for examination. Mr. Dibble represented the estate during the audit of the return and prepared the amended returns filed by the estate. Mr. Samuelson requested several items of information including, inter alia: (1) The designation of an agent in the recapture agreement; (2) comparables from which the cash rental values and property taxes were derived; (3) an affidavit of material participation; (4) a statement that decedent owned the subject properties for at least 5 of the last 8 years prior to the date of death; and (5) written appraisals of the fair market value of the subject properties. On February 13, 1990, Mr. Samuelson sent a letter to Mr. Dibble informing him of the current status of the audit and requesting several items of information in order to clarify certain items on petitioner's Form 706, Schedules A-1 and B. Mr. Samuelson urged Mr. Dibble to respond by March 1, 1990. On March 1, 1990, Mr. Dibble submitted additional information. Two meetings took place between the parties during the examination *458 of petitioner's return. A notice of deficiency was issued on July 1, 1991. Respondent determined that petitioner failed to make a valid election for special use valuation under section 2032A because petitioner submitted an agreement and a notice of election which did not contain all of the required information. OPINION Generally, the value of property includable in a decedent's gross estate is its fair market value at the time of the decedent's death based on the highest and best use of such property. Sec. 2031(a); sec. 20.2031-1(b), Estate Tax Regs. An estate is permitted, however, to elect the alternative valuation method under section 2032A, applicable to real property used for farming and small business purposes, under which property is valued on the basis of actual use rather than on the basis of highest and best use. Williamson v. Commissioner, 93 T.C. 242, 244 (1989), affd. 974 F.2d 1525 (9th Cir. 1992); Estate of Strickland v. Commissioner, 92 T.C. 16, 21 (1989); sec. 20.2032A-3(a), Estate Tax Regs. A. Requirements of Special Use Valuation
The following requirements must be satisfied *459 in order to qualify for special use valuation under section 2032A: (1) The property must be qualified real property; (2) the decedent must have been a citizen or resident of the United States at the time of death; and (3) the executor of the decedent's estate must elect the application of section 2032A and file the agreement referred to in section 2032A(d)(2). Sec. 2032A(a)(1). Each person who has an interest, whether in possession or not, in any property designated in the section 2032A(d)(2) agreement must sign the agreement consenting to the application of section 2032A(c) with respect to such property. Sec. 2032A(d)(2). If these requirements are met, the value of the qualified real property for estate tax purposes is its value based on its qualified use. Sec. 2032A(a)(1). Estate of McAlpine v. Commissioner, 96 T.C. 134 (1991), affd. 968 F.2d 459 (5th Cir. 1992); Estate of Merwin v. Commissioner, 95 T.C. 168 (1990); Estate of Strickland v. Commissioner, supra.Once made, the election is irrevocable. Sec. 2032A(d)(1). The parties agree (1) that the property *460 involved is qualified real property, and (2) decedent was a citizen or resident of the United States at the time of his death. Thus, the sole issue for our decision in the instant case is whether the estate properly elected the application of section 2032A. Section 2032A(d)(1) provides that an election under section 2032A shall be made on the estate tax return and shall be made in the manner prescribed by regulation by the Secretary. The manner of election is prescribed in section 20.2032A-8(a)(3), Estate Tax Regs. Section 20.2032A-8(a)(3), Estate Tax Regs., provides that an election under section 2032A is made by (1) attaching the agreement, described in paragraph (c)(1) of that section, to a timely filed estate tax return, and (2) a notice of election containing the following 14 items of information: (i) The decedent's name and taxpayer identification number as they appear on the estate tax return; (ii) The relevant qualified use; (iii) The items of real property shown on the estate tax return to be specially valued pursuant to the election (identified by schedule and item number); (iv) The fair market value of the real property to be specially valued under section 2032A and *461 its value based on its qualified use (both values determined without regard to the adjustments provided by section 2032A(b)(3)(B); (v) The adjusted value (as defined in section 2032A(b)(3)(B)) of all real property which is used in a qualified use and which passes from the decedent to a qualified heir and the adjusted value of all real property to be specially valued; (vi) The items of personal property shown on the estate tax return that pass from the decedent to a qualified heir and are used in a qualified use under section 2032A (identified by schedule and item number) and the total value of such personal property adjusted as provided under section 2032A(b)(3)(B); (vii) The adjusted value of the gross estate, as defined in section 2032A(b)(3)(A);
(viii) The method used in determining the special value based on use;
(ix) Copies of written appraisals of the fair market value of the real property;
(x) A statement that the decedent an/or a member of his or her family has owned all specially valued real property for at least 5 years of the 8 years immediately preceding the date of the decedent's death; (xi) Any periods during the 8-year period preceding the date of *462 the decedent's death during which the decedent or a member of his or her family did not own the property, use it in a qualified use, or materially participate in the operation of the farm or other business within the meaning of section 2032A(e)(6); (xii) The name, address, taxpayer identification number, and relationship to the decedent of each person taking an interest in each item of specially valued property, and the value of the property interests passing to each such person based on both fair market value and qualified use; (xiii) Affidavits describing the activities constituting material participation and the identity of the material participant or participants; and
(xiv) A legal description of the specially valued property. [Emphasis added.]
Compliance with the above-underscored items, (vii), (viii), (ix), (xiii), (xiv), and compliance with section 2032A(d)(2) remain in dispute. B. Parties' Positions
Respondent argues that the doctrine of strict compliance applies in the instant case, and in submitting an agreement and a notice of election not containing the information required under section 20.2032A-8(a)(3) and (c), Estate Tax Regs., petitioner failed *463 to strictly comply with the regulations, thus making the election invalid. Respondent argues in the alternative that if the substantial compliance doctrine is found to apply in the instant case, petitioner failed to substantially comply with section 20.2032A-8(a)(3) and (c), Estate Tax Regs., by submitting a notice of election not containing all of the required information and failing to cure such defects in the election by submitting relevant documents within 90 days of notice of such defective election. Petitioner argues that respondent has erroneously concluded that strict compliance with section 20.2032A-8(a)(3), Estate Tax Regs., is required in making a section 2032A special use valuation election. Petitioner contends that the perfection provisions contained in section 2032A(d)(3) provide for substantial compliance with the regulations, and petitioner substantially complied. In the alternative, petitioner argues that a provision in the Tax Reform Act of 1986 forgives petitioner's failure to comply fully with the regulations.[2] This provision, section 1421 of the Tax Reform Act of 1986 (section 1421), applies in the case of any decedent dying before January 1, 1986. The conference *464 report concerning section 1421 indicates that the amendment was enacted for the purpose of compensating for incomplete instructions on a 1982 version of the estate tax return, Form 706. McDonald v. Commissioner, 89 T.C. 293 (1987), affd. in part and revd. in part 853 F.2d 1494 (8th Cir. 1988); H. Conf. Rept. 99-841, at II-770 (1986), 1986-3 C.B. (Vol. 4) 1, 770-771. *465 For the reasons stated herein, we agree with petitioner's argument that the substantial compliance doctrine, as codified in section 2032A(d)(3), applies in the instant case. We reject, however, petitioner's argument that section 1421 forgives petitioner's failure to comply fully with the regulations. Because decedent in the instant case died after January 1, 1986, section 1421 is inapplicable. Therefore, the relevant statutory provision in the instant case is section 2032A(d)(3). C. Section 2032A
Section 2032A was enacted with the intent of allowing a decedent's family to continue to operate the family farm or small business without having to sell the property to pay the greater estate taxes that would likely result if the property was taxed at its fair market value, taking into account its highest and best use. See Estate of McAlpine v. Commissioner, 96 T.C. at 139. Congress attached rather stringent requirements to the election of special use valuation. But Congress has emphasized its intent to grant relief where it is deserved by amending the law from time to time to ease the legal requirements and the method of complying therewith. Deficit *466 Reduction Act of 1984 (DEFRA), Pub. L. 98-369, sec. 1025, 98 Stat. 1030; Tax Reform Act of 1986, Pub. L. 99-514, sec. 1421, 100 Stat. 2716; Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 6151, 102 Stat. 3724. Clearly, Congress intended to make these relief provisions available to deserving estates. Estate of McAlpine v. Commissioner, supra at 140. Section 2032A(d)(1), enacted in 1981, Economic Recovery Tax Act of 1981, Pub. L. 97-34, sec. 421(j)(3), 95 Stat. 313, directs the Secretary to prescribe regulations to establish the manner in which the election is to be made. Section 2032A(d)(3), as added by DEFRA section 1025(a), 98 Stat. 1030, applies to decedents dying after December 31, 1976. [3] The amendment provides that the executor will have a reasonable period of time, not exceeding 90 days, within which to provide additional information if the special use valuation election substantially complies with the regulations. Congress directs the Secretary in section 2032A(d)(3) to promulgate procedures by which this perfection provision is to be carried out, setting forth a time limitation for perfection at 90 days after notice *467 of defects in the election. Under the provision, an estate has an opportunity to correct omissions of information in its notice of election if the estate substantially complies with the regulations. The purpose of section 2032A(d)(3) is to remedy perceived rigidity in the potential applicability of section 2032A. McDonald v. Commissioner, supra at 306. *468 As provided in section 2032A(d)(3)(B), in order for an estate to benefit from section 2032A(d)(3), there must be substantial compliance with the regulations applicable to the special use valuation election. The applicability of the substantial compliance standard is apparent from the face of the statute although the statute does not itself define substantial compliance. Consequently, an examination of the legislative history for guidance is appropriate. McDonald v. Commissioner, 853 F.2d at 1498. The legislative history to section 2032A(d)(3) states, in part, the following: Both a notice of election and an agreement that themselves evidence substantial compliance with the requirements of the regulations must be included with the estate tax return, as filed, if the estate is to be permitted to perfect its election. Illustrations of the type of information that may be supplied after the initial filing of a notice of election are omitted social security numbers and addresses of qualified heirs and copies of written appraisals of the property to be specially valued. This provision does not, however, permit such appraisals to be obtained only after *469 the estate tax return is made. Rather, the provision simply permits the submission of previously obtained appraisals. * * * [H. Cong. Rept. 98-861, at 1241 (1984), 1984-3 C.B. (Vol. 2) 1, 495.]
It is clear from the statute and legislative history that Congress intended to provide some relief to taxpayers whose election is in substantial compliance with the regulations but which is lacking certain required information. Thus, the statute and regulations pertaining to special use valuation should be interpreted and applied in a manner that will accomplish the objective of Congress without opening the door to abuse. If we find that petitioner's election substantially complied with the regulations but did not contain all required information, then we must determine whether petitioner effectively cured the defects in accordance with the statute. Section 2032A(d)(3) imposes a threshold requirement that an election substantially comply with the regulations before any documentation submitted after the filing of the original return can be considered. If we determine that section 2032A is inapplicable in the instant case, petitioner will be required to value the *470 subject properties at their fair market values on the date of decedent's death. D. Substantial Compliance
In Taylor v. Commissioner, 67 T.C. 1071, 1077-1078 (1977), we observed: The test for determining the applicability of the substantial compliance doctrine has been the subject of a myriad of cases. The critical question to be answered is whether the requirements relate "to the substance or essence of the statute." Fred J. Sperapani, 42 T.C. 308, 331 (1964). If so, strict adherence to all statutory and regulatory requirements is a precondition to an effective election. Lee R. Dunavant, 63 T.C. 316 (1974). On the other hand, if the requirements are procedural or directory in that they are not of the essence of the thing to be done but are given with a view to the orderly conduct of business, they may be fulfilled by substantial, if not strict, compliance. * * *
See also Estate of Gunland v. Commissioner, 88 T.C. 1453 (1987). In Estate of Strickland v. Commissioner, 92 T.C. at 29, 13 of the 14 items required under *471 section 20.2032A-8(3), Estate Tax Regs., were submitted with the notice of election in a timely filed amended estate tax return. Thus, this Court in Estate of Strickland had to decide whether by omitting one item the taxpayer failed to substantially comply with the regulations under section 2032A. The taxpayer in Estate of Strickland failed to set forth in the notice of election the method used in determining the special value based on use as required in section 20.2032A-8(a)(3)(viii), Estate Tax Regs., and failed to supply the information and documentation necessary to support the method of valuation. In analyzing the omission in Estate of Strickland, we stated the following: We are aware that Congress believed, in enacting section 2032A(d)(3), that the Internal Revenue Service was being too strict in applying the regulations to disallow elections on the basis of technical mistakes in the agreements or notice of election information. Senate Floor Amendment, Deficit Reduction Act of 1984, 130 Cong. Rec. S4318 (daily ed. Apr. 11, 1984) (statement of Sen. Dixon). * * * [Id. at 28.]
Additionally, we determined that, of the 14 items to *472 be included in a notice of election under the regulations, there are certain informational items that do not relate to the substance or essence of the statute. Based on the legislative history and the principles enunciated in Taylor v. Commissioner, supra, however, we found that the omission of the method and information used in determining the special value based on use is not the type of minor omission or mistake addressed in section 2032A(d)(3). Estate of Strickland v. Commissioner, supra at 28-29. In the instant case, respondent argues that not only is the recapture agreement defective, but in addition 5 of the 14 items required under section 20.2032A-8(a)(3), Estate Tax Regs., were not submitted with the original return, causing petitioner's election to be invalid. We must therefore decide whether by omitting any or all of these items, petitioner's notice of election fails to substantially comply with the regulations under section 2032A. We will confine our discussion to the two items that most heavily influence our decision. E. Application to Present Facts 1. Method Used in Determining Special Value *473 Based on Use
With respect to the method of valuation under section 2032A, section 20.2032A-8(a)(3)(viii), Estate Tax Regs., provides that the method used in determining the special use value shall be set forth in the notice of election. Section 2032A(e)(7)(A)(i) and (ii) provides the formula for determining the value of a farm under the gross cash rental method. Section 20.2032A-4, Estate Tax Regs., further defines each element in the formula in detail. The method of valuation under section 2032A is obviously an integral part of the statutory scheme, permitting valuation of property based on actual use, rather than fair market value, for estate tax purposes. On the original return and both amended returns, petitioner indicated that the method used to determine the special use value based on qualified use was the gross cash rental method. The gross cash rental method measures the present value of the projected future cash-flows from the real property by using cash rent figures for the 5 years preceding the decedent's death. Sec. 2032A(e)(7)(A). The first step under this method is to determine a comparable rent factor, which is the excess of (1) the average annual gross cash rental *474 for comparable land used for farming purposes and located in the locality of such farm over (2) the average annual State and local real estate taxes for such comparable land. This rent factor is then divided by a capitalization factor, based on the average annual effective interest rate for all new Federal Land Bank loans. The quotient resulting from the division of these two factors is the special use value. The computation is made on the basis of information from the 5 most recent calendar years ending before the date of decedent's death. Sec. 2032A(e)(7)(A); sec. 20.2032A-4(a), Estate Tax Regs. Annual gross cash rental is the amount of cash received during a year for the use of actual tracts of comparable farmland in the same locality, undiminished by any expenses or liabilities associated with the farm operation. Sec. 20.2032A-4(b)(1), Estate Tax Regs. In using the cash rental value, the executor must identify actual comparable property for all specially valued property and cash rentals from that property. Estate of Strickland v. Commissioner, 92 T.C. 16 (1989); sec. 20.2032A-4(b)(1), Estate Tax Regs. If it is established that there is no comparable *475 land from which the annual gross cash rentals may be determined, then the average net-share-rental method may be used. Sec. 2032A(e)(7)(B)(i). Respondent argues that petitioner failed to supply the information and documentation necessary to substantiate the special use value based on the use of the property. Petitioner contends that the figures and calculations used to support the special use values are set forth in Schedule A-1 of the estate tax return, and that these figures clearly indicate the method used. Line 6 of Schedule A-1, Form 706, requires the attachment of a description of the method used to determine the special use value based on qualified use. Petitioner's attachment contains the following information: The property values were reduced by the maximum allowed under 2032A based on the usage as range land for grazing cattle and sheep. This value was based on rental value of the land, based on a per head rental computation.
Cash rental value of ranch land
on annual basis
$ 15,319
Less property taxes
11,275
Net
4,044
Average farmland bank interest rate
11.5%
Valuation of land under
formula 4044/.115
35,165
Maximum reduction allowed 750,000
valuation used on Schedule A-1
324,250
*476 Petitioner contends that where an estate provides a calculation used to determine the special use value, this calculation satisfies the requirement of section 20.2032A-8(a)(3)(viii), Estate Tax Regs., of providing information on the method used to calculate special use value. The regulations, however, require more than a brief narrative and calculations on the return. The regulations require that petitioner be able to substantiate these figures with supporting documentation; i.e., actual comparable property for all specially valued property and cash rentals from that property. Sec. 20.2032A-4(b)(2)(i), Estate Tax Regs.; see Estate of Strickland v. Commissioner, supra.
Petitioner argues that Mr. Koenitzer's analysis of the fair rental values, along with Mr. Mora's and Mr. Brazil's fair rental value appraisals, satisfy the requirements in the regulations. Both Mr. Mora and Mr. Brazil testified that they were each involved in appraising the subject properties, and their findings were reduced to writing and communicated to Mr. Dibble orally during the preparation of the return. Mr. Mora's and Mr. Brazil's alleged appraisals contain no mention whatsoever *477 of comparable land or the rental values from such land. Mr. Koenitzer was hired by the estate sometime in 1990 to prepare a Gross Cash Rental Analysis appraisal of the subject properties. Mr. Koenitzer submitted a written report based on such data, dated April 26, 1991, involving a different estate than the one in the instant case, a different date of death, and a valuation period from calendar years 1985 through 1989. A supplemental report, completed by Mr. Koenitzer on May 30, 1991, reflects a valuation period of 1981 through 1985 used for gathering rental data comparable to those for the four subject properties in the instant case. Both written reports were presented to respondent during the Appeals process, far more than 90 days after respondent first requested information to substantiate the cash rental values of the properties, even though section 2032A(d)(3) requires that defects in the notice of election be cured within 90 days after the executor is notified thereof. Petitioner indicated on the original return that the method used to determine the special value based on qualified use was the cash rental method. An attachment to the return set forth a brief narrative of the *478 method used along with various calculations. As Mr. Mora's and Mr. Brazil's alleged reports make absolutely no mention of comparable properties or their cash rents, and Mr. Koenitzer was hired some 3 years after the filing of the original return to perform his analysis, it is difficult to determine upon what basis petitioner could possibly have relied to describe the method used in the instant case. The brief narrative contained on the attachment to the return, describing the method used and accompanied by a few calculations, was not substantiated in the manner required by the statute and regulations. Given the facts before us, the figures used on the return for calculating the special value based on use appear to be mere guesses as no documentation has been presented to substantiate them. Thus, we find that petitioner's notice of election was deficient in failing to substantiate the method used in determining the special value based on use, as required by section 2032A(3)(7)(A) and section 20.2032A-4, Estate Tax Regs., and that this defect has not been cured. 2. Written Appraisals
Section 20.2032A-8(a)(3)(ix), Estate Tax Regs., provides that copies of written appraisals of *479 the fair market value of the real property are to be attached to a timely filed estate tax return. We read this to require that an appraisal be obtained before the original return is filed and that a copy thereof be submitted as part of the notice of election. See H. Conf. Rept. 98-861, at 1241 (1984), 1984-3 C.B. (Vol. 2) 1, 495. Respondent contends that petitioner failed to attach appraisals to the original return, and that in fact no written appraisals were obtained prior to the filing of the original return. Petitioner contends that appraisals of the fair market values of the subject properties were obtained from Mr. Mora and Mr. Brazil before the filing of the original return, and the figures from such appraisals were orally communicated to Mr. Dibble, the preparer of the return. Petitioner further contends that the written appraisals remained in Mr. Mora's and Mr. Brazil's business files until they were requested by Ms. Celeste Sequeira. Mr. Brazil's alleged appraisal, written on an invoice form and unsigned, contains in its entirety the following information: Appraisal for Sequeira Ranches
July 1988
Dixon Ranch appr. 180 acres
$ 480,000
Adobe Rd. Ranch Petaluma approx. 200 acres $ 1,000 per acre
200,000
Coast Ranch-Jenner approx. 900 acres x $ 800 per acre
720,000
*480 Mr. Mora's alleged appraisal, unsigned, contains in its entirety the following: July 20, 1988 Sequeira Ranch located on Sherwood Rd. Willits Calif.
3500 + acres with a fair market value of approximately $ 862,500.00 or $ 246.00 per acre. These properties consisting mainly [of] pasture land used for cattle grazing.
Although section 20.2032A-8(a)(3)(ix), Estate Tax Regs., does not specifically define what constitutes an appraisal, the written appraisal standard may be reasonably defined. Setting aside the issue of Mr. Mora's and Mr. Brazil's credibility as witnesses in the instant case, the alleged appraisals are not proper written appraisals in any event. The alleged appraisals make no mention of the bases relied upon for the figures contained therein, fail to adequately describe the property being appraised, and are unsigned. We find that Mr. Mora's and Mr. Brazil's alleged appraisals in the instant case are inadequate under any reasonable definition of appraisal and are not in substantial compliance with the written appraisal requirement under section 20.2032A-8(a)(3)(ix), Estate Tax Regs. Next, petitioner claims that the appraisals of the California probate referees, *481 contained in the Inventory and Appraisement, meet the written appraisal requirement. The Inventory and Appraisement was filed on October 12, 1988, after the filing of the original return in the instant case. While section 2032A(d)(3) does permit the submission of previously obtained appraisals after the filing of the original return, this provision does not permit such appraisals to be obtained only after the estate tax return is made. H. Conf. Rept. 98-861, supra at 1241, 1984-3 C.B. (Vol. 2) at 495. Thus, the appraisals made by the probate referees do not constitute proper written appraisals within the meaning of section 2032A. For the reasons set forth herein, we find that petitioner failed to substantially comply with the regulations under section 2032A relating to the election of special use valuation. Petitioner is therefore required to value the subject properties at their fair market values on the date of decedent's death. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure, and all statutory references are to the Internal Revenue Code in effect as of the date of decedent's death.↩
2. Sec. 1421 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat . 2716, provides as follows: (a) In General. -- In the case of any decedent dying before January 1, 1986, if the executor-- (1) made an election under section 2032A of the Internal Revenue Code of 1954 on the return of tax imposed by section 2001 of such Code * * *, and (2) provided substantially all the information with respect to such election required on such return of tax,
such election shall be a valid election for purposes of section 2032A of such Code. (b) Executor Must Provide Information.-- An election described in subsection (a) shall not be valid if the Secretary of the Treasury or his delegate after the date of enactment of this Act requests information from the executor with respect to such election and the executor does not provide such information within 90 days of receipt of such request.↩
3. Sec. 2032A(d)(3) provides the following: (3) Modification of election and agreement to be permitted. -- The Secretary shall prescribe procedures which provide that in any case in which-- (A) the executor makes an election under paragraph (1) within the time prescribed for filing such election, and (B) substantially complies with the regulations prescribed by the Secretary with respect to such election, but-- (i) the notice of election, as filed, does not contain all required information, or (ii) signatures of 1 or more persons required to enter into the agreement * * * are not included on the agreement as filed, or the agreement does not contain all required information,
the executor will have a reasonable period of time (not exceeding 90 days) after notification of such failures to provide such information or agreements.↩